Carl H. WEISSER, Appellant
(Defendant below),

v.

STATE of Wyoming, Appellee
(Plaintiff below).

No. 5115.

Supreme Court of Wyoming.

Oct. 12, 1979.

Rehearing Denied Oct. 31, 1979.

John B. Rogers, Cheyenne, for appellant.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., and Douglas J. Moench, Jr., senior law student and intern, Cheyenne, for appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice, filed a specially concurring opinion.

ROSE, Justice.

On November 26, 1974, defendant, Carl H. Weisser, was arrested and pleaded not guilty to charges of violating the securities laws of the State of Wyoming. On December 1, 1976, the matter was disposed of when the defendant pleaded guilty to one of the counts, while two others were dismissed. The court imposed a sentence which was suspended, providing, among other things, that Mr. Weisser would obey the law during the period of his probation, and he was then permitted to return to his

home state of North Dakota under the supervision of that state's probation and parole officer.

On January 4, 1979, in South Dakota, and while still on probation from the Wyoming court's sentence, the defendant was charged with, and pleaded guilty to, violating the law in connection with the sale of securities. He was sentenced to four years in the South Dakota State Penitentiary, but the sentence was suspended, provided that he abide the court's directions, which included the requirement that he spend 60 days in a county jail, but with work-release privileges. It was apparently contemplated that the county-jail requirement could be satisfied in appellant's home state of North Dakota and appellant returned to North Dakota where an agreement was apparently reached with the North Dakota authorities allowing appellant to obtain treatment at the state hospital in lieu of being in the county jail subject to work release.

On January 29, 1979, Robert E. Ortega of the Wyoming Department of Probation and Parole, executed and filed with the District Court of Goshen County, Wyoming, a petition for revocation of Weisser's probation and an application for a bench warrant. The judge, on February 5, 1979, determined, on the basis of the petition, that probable cause existed to believe that Weisser had violated the conditions of his Wyoming probation and signed an order for the bench warrant, which was then issued by the clerk of court. The defendant was apparently removed from the state hospital on February 12 because of the pending Wyoming extradition and was kept in jails in North Dakota until February 16, when the extradition warrant was executed. No hearing was held until February 22, 1979, when Mr. Weisser appeared before the Wyoming judge for a determination of whether his probation would or would not be revoked. At the conclusion of this hearing, the Wyoming probation was revoked and the original sentence imposed.

The first question we need consider is whether the above procedure violated the defendant's right to due process of law. We hold that it does not.

Preliminarily, we observe that as a practical matter appellant's liberty was, during the period of February 12–16, already subject to severe restraint because of the South Dakota sentence. However, as a legal matter, it does not appear that the State of Wyoming is chargeable with any loss of appellant's liberty until February 16, when the warrant was executed. The United States Supreme Court has said that "execution of the warrant and custody under that warrant" is "the operative event triggering any loss of liberty attendant upon parole revocation." *Moody v. Daggett*, 429 U.S. 78, 87, 97 S.Ct. 274, 279, 50 L.Ed.2d 236 (1976). Thus, a parole-revocation warrant, issued upon probable cause, was executed on February 16 and six days later appellant was given his parole-revocation hearing.

In *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the United States Supreme Court held that a parolee [1] faced with termination of parole is entitled to a preliminary as well as a final hearing with certain due-process requirements where

"... (1) there was no statute or case law requiring a hearing prior to revocation, (2) the revocation hearing was conducted by an administrative agency, (3) a substantial time lag existed between the arrest and the determination to revoke parole, and (4) the parolee was arrested at a place distant from the state institution to which he was returned before a final decision on termination was made...." *People v. Jackson*, 63 Mich.App. 241, 234 N.W.2d 467, 469 (1975).

Morrissey went on to hold that the procedures set out in that decision were not intended to "create an inflexible structure" for revocation of parole. We have said that *Morrissey*, and *Gagnon v. Scarpelli*, 411 U.S.

---

1. In *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the Court found no important differences between parole and probation revocation proceedings and extended the *Morrissey* due-process requirements to probation-revocation proceedings.

778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), "prescribe a minimal constitutional due process" for revocation by an administrative agency. *Knobel v. State*, Wyo., 576 P.2d 941, 942 (1978).

Various courts have held that the preliminary probable-cause requirement of *Morrissey* is satisfied where a judge, prior to issuing a warrant for the probationer's arrest, decides that probable cause exists to believe that the probationer has violated conditions of his probation. *People v. Jackson*, supra; and *Singletary v. State*, Fla. App., 290 So.2d 116 (1974).

In *Knobel*, supra, we held the probationer's due-process rights are indeed adequately protected where the court, as in this case, not only settles the probable-cause question initially but also determines the fate of the probationer in a final revocation hearing.[2] Where the court is undertaking probation revocation, Rule 33(f), W.R.Cr.P.,[3], requires the defendant to be present, apprised of the grounds on which the revocation is proposed, and allows him or her to be released on bond. We said in *Knobel*, supra, that the required hearing under this rule "provides an inherent sort of fairness which is not achieved through administrative procedures," citing *Petition of Meidinger*, 168 Mont. 7, 539 P.2d 1185 (1975).

It is important to notice that the *Knobel* court carefully considered both *Morrissey* and *Gagnon*, supra, and observed that those decisions were concerned with fact situations where an administrative body—not a judicial officer—determined the question of revocation of the parole or probation. We hasten to point out, unlike the situation here, those appeals were also characterized by facts with respect to which the revocation proceedings were *instituted* through administrative action, and, therefore, without the benefit of an initial court probable-cause determination.

■ Finally, we observed in *Knobel* that the *Morrissey* Court's pronouncement that it was not its purpose

" 'to create an inflexible structure for parole revocation procedures,' " 576 P.2d at 942,

and that its intention was simply to suggest a few basic requirements is

"inconsistent with the argument that these cases [*Morrissey* and *Gagnon*] or either of them make the so-called separate preliminary hearing a necessary element of due process when the revocation is a matter of judicial proceedings." 576 P.2d at 942. [Bracketed matter supplied]

We conclude that there is no violation of the rights guaranteed this defendant by the Fourteenth Amendment to the United States Constitution.

We are next asked:

Was appellant's arrest, detention and subsequent probation-revocation hearing invalid for failure of the probation department to follow statutory requirements before applying to the district court for revocation?

The appellant argues that § 7–13–409, W.S.1977[4], was not complied with—that it

---

2.  Since a person can be arrested upon an ex parte determination of probable cause, there is no reason to believe that the legislature intended to afford a probationer any more process than that which is guaranteed to any other citizen. Rule 4, W.R.Cr.P. See, also, the last sentence of § 7–13–409(a), W.S.1977, fn. 4, infra.

3.  Rule 33(f), W.R.Cr.P., provides:

    "(f) *Revocation of probation.*—The court shall not revoke probation except after a hearing at which the defendant shall be present and apprised of the grounds on which such action is proposed. The defendant may be admitted to bail pending such hearing."

4.  The statute provides:

    "*Probation, parole and conditional release revocation hearing procedures; notification of recommendation for revocation; hearing to be held.*

    "(a) Where supervision of a probationer, parolee or other conditional releasee is being administered pursuant to directive of any court having criminal or juvenile jurisdiction, the board of parole, any of the state's correctional institutions or the state probation and parole agents shall notify the appropriate court, board or institution whenever, in their view, consideration shall be given to retaking or reincarceration for a violation of probation, parole or other conditional release. Prior to notification, a hearing shall be held in

is mandatory, and therefore reversible error has been committed because appellant was not notified of and afforded a hearing on the issue of whether probable cause existed to revoke probation.

■ Even though it would have been dicta, we could have, and perhaps should have, expanded the rule of *Knobel*, supra, to include probation proceedings which are instituted by an agency—the fact situation with which we are confronted here. Section 7-13-409, W.S.1977, was passed in response to *Morrissey* and *Gagnon*, supra, and therefore must be interpreted in that context. Those cases contemplated facts whereby revocation procedures were *initially undertaken and finally resolved exclusively through the administrative process*. The United States Supreme Court, therefore, was involved with insuring minimum due process for the parolee or probationer where the entire revocation proceedings were undertaken administratively. But in Wyoming, as we have said, the probationer's due-process rights are assured when the judge receives the petition for revocation from the county attorney (*Knobel*) or the agency (this case)

and, based thereon, gives probable-cause consideration to the issuance of an arrest warrant, and thereafter conducts a hearing with the *probationer present*.

The salient feature with which we are concerned, in both *Knobel* and this appeal, is that, while different officers have initiated the revocation proceedings—the county attorney in *Knobel* and the probation officer here—in both instances the request for revocation was directed to the judge and, based upon the showing in the petition, it was the judge who decided whether or not to issue a warrant for the apprehension of the defendant. Furthermore, in both instances, it was the court that decided the ultimate revocation issue.

While there is dicta in *Knobel* to the effect that the statute is applicable only where the agency or its representative initiates the proceeding, a completion of that thought would be that it can be applicable only where the agency initiates *and* conducts the final revocation proceeding.

It would be too tenuous and gossamer a distinction for this court to make—a web too finely spun—were we to hold that

accordance with this act [§§ 7-13-409, 7-13-410] within a reasonable time, unless a hearing is waived by the probationer, parolee or conditional releasee. The appropriate officer or agents shall as soon as practicable, following termination of any hearing, report to the court, board or correctional institution, furnish a copy of the hearing record, and make recommendations regarding the disposition to be made of the probationer, parolee or conditional releasee by the court, board or correctional institution. Pending any proceeding pursuant to this section, the appropriate agents may take custody of and detain the probationer, parolee or conditional releasee involved for a reasonable period of time prior to the hearing and, if it appears to the hearing officer or agents that retaking or reincarceration is likely to follow, for such reasonable period after the hearing or waiver as may be necessary to arrange for the retaking or reincarceration.

"(b) Any hearing pursuant to this section may be before the state probation and parole officer, his designated hearing officer, or any other person authorized pursuant to the laws of this state to hear cases of alleged probation, parole or conditional release violations, except that no hearing officer shall be the person making the allegation of violation.

"(c) With respect to any hearing pursuant to this act [§§ 7-13-409, 7-13-410], the probationer, parolee or conditional releasee:

"(i) *Shall have reasonable notice in writing* of the nature and content of the allegations to be made including notice that its purpose is to determine whether there is probable cause to believe that he has committed a violation that may lead to a revocation of probation, parole or conditional release;

"(ii) Shall be permitted to consult with any persons whose assistance he reasonably desires, prior to the hearing;

"(iii) Shall have the right to confront and examine any person who has made allegations against him, unless the hearing officer determines that the confrontation would present a substantial present or subsequent danger of harm to the person or persons;

"(iv) May admit, deny or explain the violation alleged and may present proof, including affidavits and other evidence, in support of his contentions.

"(d) A record of the proceedings shall be made and preserved either by stenographic means or through the use of a recording machine."

§ 7–13–409 is not applicable where the county attorney files the revocation petition with the court but does apply when the petition is filed with the court by a probation officer.

It might be appropriate to observe that this statute (§ 7–13–409) is of questionable value where probation is the concern, in light of our holdings in *Knobel*, supra, this case, *State v. Reisch*, Wyo., 491 P.2d 1254 (1971), and *Smith v. State*, Wyo., 598 P.2d 1389 (1979). In the latter two opinions we said, in essence, that the district court never loses jurisdiction over its own probationers. In the *Reisch* case, we held that Rule 33(f) is consistent with the concept that courts which grant probation have inherent power to revoke it.

We do not, however, pass here upon a possible separation-of-powers issue which might be presented in a case where revocation of probation under § 7–13–409 is sought to be effected exclusively through the administrative processes.

■ We, therefore, hold that when the notification provided for in § 7–13–409(a) is received by a court, whether initiated by a county attorney or an agency, the preliminary probable-cause considerations are satisfied when the court, based upon an evaluation of the petition's probable-cause assertions, determines that probable cause exists and causes a warrant to be issued. Whenever proceedings are instituted by an agency official or administrative board (§ 7–13–409(a)) and the petition is addressed to an administrative officer, board or body (under § 7–13–409(a)), in circumstances where an administrative agency or agents will also make the ultimate revocation decision (by authority of § 7–13–409(b)), then the statute will apply and the defendant will be accorded such preliminary hearing and other rights as contemplated by *Morrissey* and *Gagnon*, supra.

Affirmed.

ROONEY, Justice, specially concurring.

The majority opinion resolves this case pursuant to the holding in *Knobel v. State*, Wyo., 576 P.2d 941 (1978), and I find no fault with either the reasoning or the result reached in the *Knobel* case or in the majority opinion. I believe that the language of both could result in a misinterpretation of the holdings with reference to preliminary hearings in that they do not note that a prompt preliminary hearing may be necessary after an arrest, even if the arrest were made pursuant to a bench warrant for the purpose of establishing identity.

Prior to *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), probationers and parolees were often arrested and placed in confinement to serve previously imposed sentences without a hearing of any kind. The *Morrissey* and *Gagnon* cases recognized the parole and probation status as "liberty and property" rights under the constitution, and they held that deprivation thereof could be accomplished only by virtue of due process. In the *Morrissey* case the Court noted at page 2600 of 92 S.Ct. that revocation of parole (and in the *Gagnon* case, of probation)

"is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to * * * revocations. * * *"

The purposes of the hearings immediately subsequent to an arrest are to insure against detention of a person (1) without probable cause; (2) without opportunity for bail; and (3) through mistaken identity. Such has long been the law; and without detailing the history of it, suffice it to say that the Rules of Criminal Procedure set forth the procedures for these protections in present activities.[1] The minimal requirements relative thereto are those referred to in the *Morrissey* and *Gagnon* cases.

---

1. Rule 5, W.R.Cr.P. requires the taking of the arrested person "without unnecessary delay" before the nearest available commissioner, who must inform him of his constitutional rights and admit him to *bail*. Rule 8, W.R.Cr.P. sets forth bail requirements. Rule 7, W.R.Cr.P. provides for a preliminary examination to determine if there is "*probable cause* to believe that an offense has been committed and that the *defendant committed it.*" (Emphasis supplied).

The probable cause aspect of this case is adequately covered by the majority opinion. But, with reference to identity, supposing that the person arrested was actually John Smith instead of appellant, and supposing that the ultimately held revocation hearing was delayed for six months. The first opportunity for John Smith to present the identity issue would have been after he spent six months of his life improperly incarcerated. The potential for such in this case is with reference to a constitutional due process error and would warrant inquiry by us as plain error pursuant to Rule 7.05, W.R.A.P.[2], regardless of whether or not it was raised in the district court. *Hays v. State*, Wyo., 522 P.2d 1004 (1974).

However, error does not exist in this case in this respect because appellant acknowl-

edged his identity and signed an extradition waiver prior to being taken into custody under the probation violation warrant. He also subsequently acknowledged his identity at the revocation hearing.

In summary, I concur with the majority of the court that appellant's constitutional right relative to the establishment of probable cause for arrest was not violated, but I go further to determine if his constitutional right relative to the establishment of identity was violated and find that it was not.

---

2. Rule 7.05, W.R.A.P. provides:

"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."