John GRONSKI, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 84–247.

Supreme Court of Wyoming.

June 6, 1985.

Leonard D. Munker, State Public Defender, Martin J. McClain, App. Counsel, Wyoming Public Defender Program, Cheyenne, and Steve Politi, Defender Aid Program, Laramie, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Senior Asst. Atty. Gen., and Robert Nicholas, Legal Intern, for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

ROONEY, Justice.

This is an appeal from a probation revocation. Appellant words the issue on appeal as follows:

"Whether the district court erred in considering illegally seized evidence in determining whether or not Appellant had, in fact, violated the terms of his probation, and in revoking Appellant's probation."

The evidence in question was held to be inadmissible for the purpose of prosecuting appellant for possession and delivery of a controlled substance, but admissible for the purpose of revoking his probation.

We affirm.

On May 21, 1984, three law enforcement officers were conducting a consent search of an apartment in connection with the execution of a valid arrest warrant. While the search was being conducted, appellant drove up to the apartment building and approached the apartment carrying a large paper bag. None of the officers recog-

nized him at that time. After appellant entered the apartment and greeted its renter, the officers identified themselves as police officers; appellant became tense, clenched his fists, and urinated in his trousers. One of the officers took the paper bag out of appellant's hands and looked inside it, finding what he believed to be marijuana. Another officer then went to appellant's car, noticed more suspected marijuana inside, and seized it.

Appellant was charged on June 13, 1984, with possessing a controlled substance with intent to deliver. On June 25, 1984, defense counsel filed a Motion to Suppress Evidence Obtained by Illegal Search and Arrest and Motion to Dismiss. Both motions were based on a lack of probable cause to arrest appellant or to search him, or to stop and frisk him.

The district court granted this motion, saying, in part, in its Decision Letter:

"In the case at hand, the officers did not have reason to believe that the defendant was armed and dangerous. They made no preliminary inquiry as to what he was doing at the apartment or as to what was in the bag. The officers did not recognize the defendant. He was not doing anything illegal, suspicious, unusual, or dangerous. There was no reason to think that he was armed." [1]

On August 20, 1984, the charges against appellant were dismissed. However, in an unrelated and prior incident, appellant had pled guilty to two counts of possession and delivery of a controlled substance, for which he was sentenced to a term of not less than one year nor more than three years for one count, and not less than one year nor more than two years for the other count, with the sentences to run concurrently. The two sentences were suspended and appellant was placed on supervised probation for a period of two years with the conditions that appellant pay a $2,000 fine, be under the direction of the State Department of Probation and Parole and obey that department's rules and regulations, and that appellant "obey the law and lead a worthy life." The district attorney's office petitioned the district court to revoke this probation on the basis of the May 21, 1984, incident.

Appellant resisted the petition for revocation of probation because the evidence in support thereof had been ruled inadmissible in the case in chief. The district court reasoned otherwise and on August 31, 1984, granted the petition because of "the Defendant's failure to obey the terms of his said probation."

█ The imposition as well as the revocation of probation lies within the sound discretion of the district court, and we will not reverse the actions of the district court unless that discretion is abused. *State v. Reisch,* Wyo., 491 P.2d 1254 (1971); *Minchew v. State,* Wyo., 685 P.2d 30 (1984). Probation can be revoked on the basis of conduct which is not criminal. *Ketcham v. State,* Wyo., 618 P.2d 1356 (1980). The evidence utilized by the district court in making the decision to revoke probation need not establish the violation of the conditions of probation beyond a reasonable doubt, and the usual rules of evidence need not be applied. *Minchew v. State,* supra. Revocation because of a violation of law is not precluded merely because the probationer is acquitted in a criminal proceeding predicated on such violation. *Ketcham v. State,* supra. In short, all that is required is a conscientious judgment by the court, after hearing the facts, that a violation of the probation has occurred.

"A probationer or parolee is not entitled to the 'full panoply of rights' that attend a criminal prosecution. *Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *United States v. Strada,* 8 Cir.1974, 503 F.2d 1081." *Ketcham v. State,* supra, 618 P.2d at 1359.

---

**1.** We are not asked in this appeal to comment on the trial court's ruling that urinating in one's trousers after being informed that police officers are present in the room is not "unusual" or "suspicious."

We noted in *Minchew v. State* that a probation revocation hearing is not a trial on a new criminal charge, but merely an extension of the sentencing procedure resulting from the original conviction.

"'* * * We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.' *Morrissey v. Brewer*, 408 U.S. 471, 488–489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972) re paroles with *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) extending the same to probationers." Id., 685 P.2d at 31–32.

The great majority of courts which have ruled on this question have held that evidence obtained by illegal search and seizure is admissible in a probation revocation hearing even though it would be inadmissible in a criminal prosecution. See Annotation, Admissibility, in State Probation Revocation Proceedings, of Evidence Obtained through Illegal Search and Seizure, 77 A.L.R.3d 636, 641 (1977).

In doing so, they have considered the purposes behind the exclusionary rule to determine whether those purposes would be served by extending that rule to probation revocation proceedings. One of the recognized purposes behind the rule is to "deter future unlawful police conduct." *United States v. Winsett*, 518 F.2d 51, 53, 30 A.L.R.Fed. 817 (9th Cir.1975). If some deterrence can be expected from application of the rule to probation revocation hearings, it must be weighed against the potential injury to the function of such proceedings. *United States v. Winsett*, supra.

The Alaska Supreme Court, in analyzing this issue, said:

"'* * * Although we recognize, of course, that such evidence would not be admissible in a court of law, we believe that an agency whose delicate duty is to decide when a convicted offender can be safely allowed to return to and remain in society is in a different posture than the court which decides his original guilt. To blind the authority to relevant facts in this special context is to incur a risk of danger to the public which, at least as of this date, outweighs the competing considerations of a problematical gain in deterrence.' " *State v. Sears*, Alaska, 553 P.2d 907, 913 n. 13 (1976), quoting from *In re Martinez*, 1 Cal.3d 641, 83 Cal. Rptr. 382, 463 P.2d 734, 740, cert. denied 400 U.S. 851, 91 S.Ct. 71, 27 L.Ed.2d 88 (1970).

"* * * Clearly, it would be destructive of the purpose of probation to hold that the sentencing court is forbidden to consider relevant facts concerning Sears' possession of marijuana in determining whether Sears should be allowed to continue on probationary status. If Sears' rehabilitation is to be furthered and society protected from antisocial conduct, then it is crucial to rational decision-making that this significant information not be denied the very court which initially imposed probation. Here the needs of the probation system clearly outweigh the possible deterrence of unlawful methods of law enforcement." *State v. Sears*, supra, 553 P.2d at 913.

A second rationale for the exclusionary rule

"* * * is the imperative of judicial integrity which requires that the courts not be made 'party to lawless invasions of the constitutional rights of citizens by permitting unhindered governmental use of the fruits of such invasions.' " (Footnotes omitted.) *State v. Sears*, supra, 553 P.2d at 912.

Examination of that rationale in the present context also leads us to a balancing test. We agree with the conclusion reached by the Alaska court that:

"* * * [I]n the special context of a probation violation proceeding, it is our belief, on the balance, that the facts of this case present no such threat to the imperative of judicial integrity as to outweigh

the clear need of the sentencing court to know whether the probationer is conducting his life in a manner which warrants continuation of his present probationary status, or whether because of antisocial conduct the goal of rehabilitation is not being furthered and thus, either a change in the conditions of probation, or incarceration, is necessary in order to protect society." *State v. Sears*, supra, 553 P.2d at 914.

In *Patterson v. State*, Wyo., 691 P.2d 253, 259 (1984), cert. denied —— U.S. ——, 105 S.Ct. 2048, 85 L.Ed.2d 311 (1985), we said, paraphrasing from *United States v. Leon*, —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), reh. denied —— U.S. ——, 105 S.Ct. 52, 82 L.Ed.2d 942 (1985), that:

" * * * [T]he exclusionary rule was not a necessary corollary of the Fourth Amendment but is instead a judicially created remedy designed to protect Fourth Amendment rights generally through its deterrent effect; that in gauging its deterrent effect, the exclusion question 'must be resolved by weighing the costs and benefits;' that the exclusionary rule exacts 'substantial social costs;' that the truth-finding functions of judges and juries are impeded by the exclusionary rule and some guilty defendants may go free or receive reduced sentences due to plea bargains; that indiscriminate application of the exclusionary rule may generate disrespect for the administration of justice; and that the rule should be applied only where its remedial objectives are best served. Id. 104 S.Ct. at 3412, 3413."

■ In summary, we recognize that a probation revocation proceeding is qualitatively different from a criminal trial, both in purpose and procedure. Also, the goal of deterrence is not likely to be furthered by the suggested expansion of the exclusionary rule, particularly in cases where law enforcement personnel are unaware that the object of their search and seizure is a probationer. Accordingly, the evidence was properly admitted in this case.

Affirmed.