Jason **SWACKHAMMER,**
Appellant (Defendant),

v.

The **STATE** of **Wyoming,**
Appellee (Plaintiff).

No. 90–88.

Supreme Court of Wyoming.

April 9, 1991.

Wyoming Public Defender Program, Leonard D. Munker, State Public Defender, David Gosar, Assistant Public Defender, Gerald M. Gallivan, Director, Wyoming Defender Aid Program, Deborah Gabriel, Student Director, and Donna A. Murray, Student Intern., for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Sr. Asst. Atty. Gen., Donald G. Moore, Legal Intern., for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

THOMAS, Justice.

In this appeal, Jason Swackhammer challenges the sufficiency of the evidence presented at a probation revocation hearing to justify the order revoking his probation. A collateral issue is raised attacking the use of testimony reporting hearsay at the revocation hearing. In addition, the justification for revocation because of Swackhammer's departure from the state of Wyoming while awaiting transportation to the state penitentiary is challenged. We hold that no violation of Swackhammer's rights of due process as a probationer occurred because of the testimony reporting hearsay and that the evidence was sufficient to. justify the revocation of his probation for the commission of a new offense. Since probation properly was revoked on the premise of a new offense, we do not consider the question of whether Swackhammer had permission to leave the state. We affirm the order of the district court revoking Swackhammer's probation.

In his Brief of Appellant, Swackhammer states the following issues:

"I. Whether the district court erred by allowing hearsay testimony at defendant's probation revocation hearing on the issue of whether a condition of probation was violated.

"II. Whether the district court abused its discretion by determining the state had met its burden of proof when the evidence clearly showed that the state had not met the burden established by the Wyoming courts."

The State of Wyoming, in its Brief of Appellee, sets forth the following issue:

"Whether the district court properly exercised its discretion in determining sufficient evidence was presented at trial to justify appellant's probation revocation?"

On October 20, 1989, the district court sentenced Swackhammer to a term of not less than two nor more than three years in the Wyoming State Penitentiary. The sentence was imposed after Swackhammer entered a plea of guilty to one count of larceny in violation of § 6–3–301(a), W.S.1977 (June 1988 Repl.). All but 30 days of Swackhammer's sentence was suspended by the trial court, and he was required to serve two years on probation after his release from the penitentiary. There were several conditions attached to the probation. Among those conditions were requirements that he obey the rules and regulations of the Wyoming Department of Probation and Parole; that he obey the law; and that he lead a worthy life during the period of probation.

On December 4, 1989, the Department of Probation and Parole filed a petition for revocation of Swackhammer's probation and requested the issuance of a bench warrant. The grounds stated for seeking revocation were that Swackhammer had fled

the jurisdiction of the court prior to beginning service of the thirty day penitentiary sentence and that he was alleged to have committed a second grand larceny prior to leaving the state. The bench warrant was issued, and Swackhammer was arrested and brought before the court.

A revocation hearing was conducted at which the State produced evidence pertaining to the alleged larceny and Swackhammer's flight from the state. With respect to the larceny, the evidence showed that, on November 5, 1989, a resident of Evansville contacted the Evansville Police Department about some coin packaging materials he had found near a local river. The police retrieved the packaging materials, which were determined to be proof packages for uncirculated coins. Some of those contained address labels for C.K. Peterson at Evansville. Police officers then questioned Bryan Peterson, C.K. Peterson's son, about the coins. Bryan Peterson reported that about one-half of his parents' coins, which had been kept in a suitcase in a bedroom of their home, were missing and had been stolen. Further investigation by the officers disclosed that Swackhammer had recently purchased items at a local convenience store using uncirculated coins.

After speaking a second time with Bryan Peterson, the officers endeavored to locate Swackhammer as a suspect in the larceny case. They were unable to find him because Swackhammer had left town with two runaway girls on his way to Arizona. After the parents of the girls contacted police officers, Swackhammer was apprehended near Las Vegas, New Mexico by the New Mexico State Police.

Swackhammer testified at the revocation hearing and explained that there had been an occasion when he had watched Bryan Peterson force the door of his parents' bedroom, retrieve the suitcase from underneath the bed, open it, and remove coins that Bryan had then spent at a convenience store. Swackhammer stated that the incident leading to the accusation against him occurred later. On that occasion, Bryan again entered the Petersons' bedroom, after forcing the door, and removed some coin packets from the same suitcase. Bryan was going to break open the packets in the bedroom but, when he hesitated to do that, Swackhammer told him that he and Jessie Warberg would take the plastic cases down to the river and break them open for him. After this was accomplished, Swackhammer went to the convenience store and spent some of those coins. Swackhammer also testified that he was under the impression that the coins he received belonged to Bryan Peterson. He denied that the coin packets he broke open were marked with C.K. Peterson's name.

The trial court ruled that Swackhammer had violated his probation by leaving the jurisdiction with stolen property and two juvenile girls and also by committing a new larceny. The court revoked Swackhammer's probation and reinstated his previous sentence of not less than two nor more than three years in the penitentiary. Swackhammer challenges the sufficiency of the evidence to revoke his probation on either of the grounds alluded to by the trial court. We are satisfied, and hold, that there was sufficient evidence to revoke Swackhammer's probation on the ground of the new larceny, and we do not need to resolve the question of whether Swackhammer received permission to leave the state as he claimed.

We first consider Swackhammer's contention that his due process right to confront witnesses against him was violated when the court admitted testimony by police officers that reported hearsay. The United States Supreme Court has ruled that a probationer does have a right to confront witnesses against him in a probation revocation proceeding, and we have recognized and applied that ruling. In *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court of the United States held that, upon revocation of parole, the parolee is entitled to certain due process protections. Procedurally, those protections include the right to a preliminary hearing on probable cause to revoke parole followed by a final, less summary, revocation hearing. At each hearing stage, a parolee has a right to notice of the alleged violations, the right to

appear and present evidence in his own behalf, a conditional right to confront adverse witnesses, a right to a hearing by an independent decision maker, and the right to receive a written report of the hearing. *Morrissey.* In *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the Supreme Court extended the same due process protections to probationers in probation revocation proceedings.

These protections have been incorporated into Wyoming's statutes and applicable court rules. In Rule 33(f), W.R.Cr.P., the right to a hearing is recognized:

"(f) *Revocation of probation.*—The court shall not revoke probation except after a hearing at which the defendant shall be present and apprised of the grounds on which such action is proposed."

The *Morrissey/Gagnon* protections are codified in § 7–13–408, W.S.1977 (June 1987 Repl.), as applied to administrative revocation proceedings. The statute includes, among the protections furnished, a conditional right to confront the witnesses against the probationer:

"(c) With respect to any hearing pursuant to this section, the probationer, parolee or conditional releasee:

\*   \*   \*   \*   \*   \*

"(iii) Shall have the right to confront and examine any person who has made allegations against him, unless the hearing officer determines that the confrontation would present a substantial present or subsequent danger of harm to the person; \* \* \*."

The protections articulated in § 7–13–408, W.S.1977 (June 1987 Repl.), are intended to apply in administrative revocation proceed-

ings but, by decisions of this court, they have been extended, with the exception of the separate preliminary hearing requirement, to proceedings in which the court acts on a petition for revocation filed by a county attorney or the Board of Probation and Parole. *Mason v. State*, 631 P.2d 1051 (Wyo.1981); *Weisser v. State*, 600 P.2d 1320 (Wyo.1979); *Knobel v. State*, 576 P.2d 941 (Wyo.1978).[1] *See Cooney v. Park County*, 792 P.2d 1287 (Wyo.1990).

Swackhammer claims that his due process right of confrontation was violated when testimony containing hearsay was used against him at the probation revocation hearing. During the course of that hearing, one of the officers who investigated the alleged larceny of the rare coins testified, over an objection by counsel for Swackhammer, as follows:

"Q. What happened then?

"A. I contacted Bryan Peterson, Jason Swackhammer, Jessie Warberg at the residence, spoke with Bryan Peterson, son of C.K. Peterson, asked him if he knew why this packaging material would be down by the river, and if his parents owned any coins.

"Q. What next?

\*   \*   \*   \*   \*   \*

"A. Peterson stated that his parents did own coins, he went into a bedroom, retrieved a suitcase from the bedroom, checked the contents. \* \* \* He checked the suitcase and contents of the suitcase and reported at that time that approximately half of the contents of the suitcase, half of his parents' coins were missing and had been stolen from the residence."

---

1. There is language in *Knobel v. State*, 576 P.2d 941 (Wyo.1978), and *Weisser v. State*, 600 P.2d 1320 (Wyo.1979), which could be perceived as suggesting that the protections of § 7–13–408, W.S.1977 (June 1987 Repl.), and those articulated in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), are applicable only to administrative revocation proceedings. *Weisser.* Subsequent cases cited in the text, however, have extended these protections to judicial proceedings as well, except for the requirement of a preliminary

hearing, which the cases say can be fulfilled by the trial court's probable cause consideration in connection with the issuance of an arrest warrant. *See, Knobel; Weisser.* Whether they arise from statute or from constitutional due process considerations that are discussed in *Morrissey* and *Gagnon*, the due process rights must be afforded in a judicial revocation proceeding. *Mason v. State*, 631 P.2d 1051 (Wyo.1981), *Weisser*, and *Knobel* all interpreted § 7–13–409, W.S. 1977, a predecessor to § 7–13–408, W.S.1977 (June 1987 Repl.).

At a later point in his testimony, the same officer reported a conversation with Jessie Warberg:

"Q. And what did that conversation entail, if anything?

\* \* \* \* \* \*

"A. Mr. Warberg indicated he was present and accompanied, while Jason Swackhammer stole the coins from the Peterson residence, and he accompanied Jason Swackhammer to the vicinity of the river in Evansville where the two of them broke the packaging material in two in order to obtain the coins from the material, and he accompanied Jason Swackhammer to the State of New Mexico and was present with him at the Santa Fe coin shop where Jason Swackhammer sold the uncirculated silver coins there in exchange for $93.15."

These statements constitute hearsay, defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), W.R.E. The declarants, Peterson and Warberg, were not present in court and could not be cross-examined concerning the validity of the statements that the officer reported. The question posed by Swackhammer is whether the admission of this hearsay evidence violated Swackhammer's due process right to confrontation.

█ The use of hearsay did not, in and of itself, constitute reversible error. Rule 1101(b)(3), W.R.E., provides that the rules of evidence do not apply in probation revocation proceedings. As we explained in *Collins v. State*, 712 P.2d 368, 371 (Wyo. 1986):

" \* \* \* [T]he right of confrontation and cross-examination in a revocation hearing is not as positive as it is in a criminal proceeding. The admission of hearsay evidence without confrontation of witnesses does not *ipso facto* amount to error in revocation proceedings."

This rule does not stand for the proposition, however, that the use of hearsay in revocation proceedings is without established parameters. In *Mason*, 631 P.2d at 1055–56, we stated rules for the use of hearsay evidence in such a situation:

" \* \* \* While hearsay is not categorically barred from revocation hearings, the hearsay admitted in this case was improper.

"It is impossible for the defendant to test the accuracy and truth of the State's witnesses if they are not at the hearing to give their testimony. \* \* \* Both the defendant and the social system have a stake in making sure the factual determination in a revocation hearing is not an arbitrary one but is based on facts which pass the *Morrissey*, truth-seeking test of cross-examination, \* \* \*. In this case the only evidence presented was in the form of hearsay which the defense was unable to test and verify. This was a clear violation of the appellant's right to due process. *Anaya v. State*, [96] Nev. [119], 606 P.2d 156 (1980). The State must make a good-faith attempt to produce the witnesses at a probation- or parole-revocation hearing or else show cause why they cannot appear. If for some valid reason a witness is unavailable, whether or not the information may be introduced through hearsay will be determined by the use of a balancing test. This test will weigh the defendant's interest in confronting and cross-examining the witnesses against him with the practical difficulties of producing the witness. *Anaya v. State*, supra."

This case stands for two propositions: (1) probation revocation may not be based solely on the use of hearsay evidence; and (2) if hearsay evidence is admitted, the trial court must apply the indicated balancing test before receiving such evidence. In this case, the introduction of hearsay evidence met the first requisite of *Mason* because the revocation of probation was not premised solely on the hearsay evidence.

Swackhammer's probation was revoked because the court found that he had committed a larceny. Swackhammer's own testimony, coupled with the direct observations of the officers, was used to establish the necessary elements of that offense.

Larceny consists of "steal[ing], tak[ing] and carry[ing], lead[ing] or driv[ing] away property of another with intent to deprive the owner or lawful possessor." Section 6–3–402(a), W.S.1977 (June 1988 Repl.). Swackhammer testified that he did take coin packets from C.K. Peterson's house, broke them open, and spent some of the coins. One of the officers testified that the coin packets found by the river had C.K. Peterson's name on it. Thus, Swackhammer's revocation of probation was based on evidence other than hearsay evidence.

Swackhammer, however, complains that the balancing test established for the use of hearsay by *Mason* was not followed in his case. He asserts, correctly, that the trial court did not analyze the evidence, after his objection at the hearing, to balance: (1) Swackhammer's right to cross-examine, (2) the practical difficulties of producing the declarant witnesses at the hearing, and (3) the reliability of the hearsay to be presented. *Mason.* In our view, there was sufficient independent evidence in this instance to support the decision of the trial court to revoke probation without any resort to the hearsay evidence. In light of that independent evidence, we hold that Swackhammer's right of confrontation was not infringed by the use of the hearsay, which was cumulative evidence, without applying the test established by *Mason. See People in Interest of C.J.W.,* 727 P.2d 870 (Colo.App.1986).

■■■ In a probation revocation proceeding, the duty of the court is to determine whether there are verified facts establishing a violation of the release agreement and, whether in light of any proven violation, the probation should be revoked. *Mason.* The evidence need not establish a violation of the conditions of probation beyond a reasonable doubt. *Cooney,* 792 P.2d 1287; *Panesenko v. State,* 706 P.2d 273 (Wyo.1985). All that is necessary is the court's conscientious judgment, after hearing the evidence, that a violation of probation has occurred. *Panesenko; Longwell v. State,* 705 P.2d 336 (Wyo. 1985).

The decision to revoke probation and impose a sentence is a decision left almost entirely to the sound discretion of the trial court. Such sentencing decisions are not disturbed on appeal unless the record discloses a clear abuse of discretion on the part of the sentencing court. *Cooney; Lower v. State,* 786 P.2d 346 (Wyo.1990); *Schmidt v. State,* 738 P.2d 1105 (Wyo. 1987); *Gronski v. State,* 700 P.2d 777 (Wyo.1985). We have explained the standard in this way:

> " 'A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did.' " *Mower v. State,* 750 P.2d 679, 680–81 (Wyo.1988), *aff'd on collateral issue* 770 P.2d 233 (Wyo.1989), citing *Martinez v. State,* 611 P.2d 831, 838 (Wyo.1980).

To the same effect is *Ketcham v. State,* 618 P.2d 1356 (Wyo.1980).

■■ In addition to the appellant's own testimony, summarized above, the trial court had before it the testimony of the officers relating to the packages that had been found with C.K. Peterson's name on them. The court also had testimony from Jessie Warberg. Warberg stated that he and Swackhammer took the coin packages down to "the lake" and broke them open. Appellant relies extensively on Warberg's testimony on cross-examination to this effect:

> "Q. When Jason came out of the house, what did he say?
>
> "A. Something about Bryan, I think, gave him coins, I am not sure, it was a while back, it was vague.
>
> "Q. Okay, something like Bryan gave him the coins?
>
> "A. I am not sure, it was a while back."

This testimony does not demonstrate the soundness of appellant's theory of the case. Swackhammer asserts that he did not steal the coins but received them from Bryan Peterson, thinking that they belonged to Bryan. Warberg didn't see that, and he had no more than Swackhammer's state-

ment of the fact that Bryan Peterson gave Swackhammer the coins. The reasonable inferences that can be drawn from the information before the court are sufficient to demonstrate that Swackhammer knowingly participated in the larceny, whether Bryan Peterson was also involved or not. *See Wells v. State,* 613 P.2d 201 (Wyo.1980) (intent to steal may be established by circumstantial evidence).

As we already have noted, there is no requirement to establish the intent element of larceny beyond a reasonable doubt to justify revocation of appellant's probation. In *Panesenko,* 706 P.2d at 275, we upheld the revocation of that defendant's probation for stealing a car battery, even though he claimed he had only "borrowed" it:

> "Under well recognized principles the action of the trial court in revoking Panesenko's probation was proper even if there was a defect in establishing petit larceny beyond a reasonable doubt."

We hold that the trial court did not, in any way, abuse its discretion in revoking Swackhammer's probation in this case.

The evidence established sufficient participation in a larceny to support the court's action.

Swackhammer's next claim is that the district court abused its discretion by terminating his probation since the State had not met its burden of proving a violation of the conditions of that probation. Swackhammer's argument is that the State did not prove by sufficient evidence that he left the state without permission. As we have indicated, there is no need for us to consider this ground for revocation because the larceny, when established, furnished more than sufficient reason to revoke Swackhammer's probation and order the execution of the sentence originally imposed.

The order revoking appellant's probation and imposing sentence is affirmed.