**Gloria Mae KUPEC, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 91–194.**

Supreme Court of Wyoming.

July 31, 1992.

Leonard D. Munker, State Public Defender, Gerald M. Gallivan, Director of the Defender Aid Program, and Stephany A. Meyer, Student Intern for the Defender Aid Program, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Barbara L. Boyer, Sr. Asst. Atty. Gen., and Michael K. Kelly, Asst. Atty. Gen., for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT* and GOLDEN, JJ.

MACY, Chief Justice.

Appellant Gloria Mae Kupec appeals from the lower court's order revoking her probation and reinstating her original sentence.

We affirm.

Appellant states the issues as follows:

I. Whether the district court erred by allowing hearsay testimony at Appellant's probation revocation hearing on the issue of whether a condition of probation was violated?

II. Whether the district court erred by allowing evidence of the urinalysis without an established chain of custody?

III. Whether the district court judge erred in finding a violation when he relied solely on the breathalyzer result without finding that Appellant willfully and intentionally consumed alcohol?

IV. Whether the district court erred in failing to credit Appellant's minimum and maximum sentence for the two hundred fifty days served in the S.T.O.P. program?

On November 13, 1989, the district court sentenced Appellant to not less than two years nor more than twelve years in the Women's Correctional Facility. The district court imposed the sentence after Appellant entered a plea of guilty to delivery of a controlled substance in violation of Wyo.Stat. §§ 35–7–1031(a)(i) and 35–7–1016(b)(iv) (1988). On May 3, 1990, Appellant filed a motion to reduce her sentence, which the court granted on November 26, 1990. The court suspended Appellant's sentence and placed her on probation for four years, with the first year to be spent in the Surveillance and Treatment of Offender Program (S.T.O.P.). Appellant's probation, among other things, prohibited her from consuming alcohol or using illegal drugs. In addition to her regular probation, the S.T.O.P. required Appellant to remain at her residence except during those times approved by her probation agent; to wear an electronic monitoring device to ensure compliance with her residential confinement restrictions; to travel only by approved routes; to remain employed full time; to attend treatment and counseling programs; and to allow only guests into her residence who had received the probation officer's prior approval.[1]

---

* Chief Justice at time of oral argument

1. We take judicial notice of these conditions. The S.T.O.P. conditions were not included in the record but were attached as an appendix to Appellant's brief. *See Harvey v. State*, 835 P.2d 1074 (Wyo.1992).

On May 28, 1991, the district attorney filed a petition to revoke Appellant's probation after a urine test administered by her probation officer revealed the presence of cocaine metabolites. The district attorney subsequently filed a second petition to revoke Appellant's probation after a breathalyzer examination conducted by the Laramie County sheriff's office on June 19, 1991, indicated that she had a blood alcohol content of .151%. On July 2, 1991, the district court conducted a hearing to determine whether Appellant violated her probation by ingesting alcohol and cocaine. After hearing all the evidence, the court found that Appellant had violated her probation conditions. The court held a second hearing on July 10, 1991, to hear any mitigating circumstances, whereupon it reimposed Appellant's original sentence.

At the initial probation revocation hearing, Kelly Mann, the probation officer who collected Appellant's urine sample, did not testify. Rather than calling Ms. Mann, who had moved to Nebraska, the State called Chris Danni, another S.T.O.P. probation officer. Ms. Danni identified the initials of the sample taker on a urine test kit which purportedly contained Appellant's contaminated urine sample as belonging to Ms. Mann. Two chemists from the Wyoming Department of Health testified that the urine sample purportedly belonging to Appellant tested positive for cocaine metabolites.

To support its allegation of alcohol consumption, the State called John Roncalio, Appellant's probation officer following Ms. Mann's departure. Mr. Roncalio testified that he visited Appellant in her home during the evening of June 19, 1991, because she had missed a mandatory S.T.O.P. group meeting. While at Appellant's home, Mr. Roncalio used a portable breathalyzer machine to determine whether she had consumed any alcohol. Mr. Roncalio conducted three separate breathalyzer examinations on Appellant, with each test indicating the presence of alcohol. To verify the results of the breathalyzer tests, Mr. Roncalio transported Appellant to the Laramie County sheriff's office where, in a fourth breathalyzer test, Appellant's blood alcohol content registered .151%. Mr. Roncalio testified that, when he confronted Appellant with her positive breathalyzer test results, she denied drinking any alcohol but admitted maybe unknowingly consuming some spiked lemonade.

The trial court found that, by ingesting cocaine and alcohol, Appellant had violated her probation conditions. The court revoked Appellant's probation and reinstated her original sentence of not less than two years nor more than twelve years in the Women's Correctional Facility. Appellant was granted credit against the minimum and maximum terms of her sentence for the time she had already served in the correctional facility.

Appellant claims that the district court improperly concluded that she ingested cocaine because she was denied her right to confront the probation officer who monitored the urine collection; because the district court improperly relied upon hearsay testimony; and because the court admitted her urinalysis results into evidence without establishing a chain of custody. Appellant also argues that the court erred by relying upon her breathalyzer test results without finding that she willfully and intentionally consumed alcohol. We are satisfied that the district court had sufficient evidence to revoke Appellant's probation for consuming alcohol, and, consequently, we decline to address Appellant's claims concerning her rights of confrontation, hearsay, and chain of custody.

■ Appellant contends that the district court erred by failing to consider evidence which demonstrated that she did not willfully consume alcohol. Our statutes and rules concerning probation do not specify whether a probationer must *willfully* violate a probation condition before a court may revoke probation. *See, e.g.,* Wyo.Stat. § 7–13–401(a)(x) (Supp.1991). Similarly, our prior probation revocation cases have not specifically required that a probationer willfully violate a probation condition before a court may revoke probation. *See Kahlsdorf v. State,* 823 P.2d 1184, 1195 (Wyo.1991).

The United States Supreme Court has considered the issue of whether a probationer must willfully violate a probation condition in the context of his ability to pay a fine or make restitution. *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). In *Bearden*, the Supreme Court found that a state is perfectly justified in imprisoning a probationer who willfully fails to pay a fine which was required as a probation condition. However, when a probationer is unable to pay the fine or make the restitution through no fault of his own, automatically revoking his probation without first considering an alternative means of punishment would be fundamentally unfair. 461 U.S. at 668–69, 103 S.Ct. at 2070–71. In a footnote, the Supreme Court addressed the question of whether a defendant who violates a probation condition not mandating the payment of money must act willfully. The Supreme Court reasoned that a probationer's lack of fault in violating a probation condition not involving the payment of money should not necessarily prevent a court from revoking probation. For example, a court should not allow a chronic drunken driver to remain on probation when that person has no control over his consumption of alcohol and constitutes a threat to society. 461 U.S. at 668 n. 9, 103 S.Ct. at 2070 n. 9.

The Utah Court of Appeals recently followed the approach suggested by *Bearden* to determine whether a defendant charged with violating a probation condition not involving the payment of money must act willfully. *State v. Hodges*, 798 P.2d 270 (Utah Ct.App.1990), *cert. denied*, (Dec. 26, 1990). The Utah Court of Appeals held: "[I]n order to revoke probation for the violation of a condition of probation not involving the payment of money, the violation must be willful, or, if not willful, must presently threaten the safety of society." *Id.* at 277. We agree with the rule as stated by the Utah Court of Appeals. Revoking the probation of a defendant whose failure to comply with his probation conditions was not willful but instead resulted from factors beyond his control would be fundamentally unfair. At the same time, a court cannot be prevented from revoking probation in situations where the probationer's conduct is beyond his control and such conduct creates a threat to society.

Applying the foregoing test to the present case, we must determine whether sufficient evidence exists to support a finding that Appellant willfully consumed alcohol. In a probation revocation proceeding, it is within the trial court's discretion to determine whether a probationer violated his probation conditions, and that determination will not be reversed unless the discretion was abused. *Swackhammer v. State*, 808 P.2d 219, 224 (Wyo.1991); *Ketcham v. State*, 618 P.2d 1356, 1360 (Wyo.1980). This Court has frequently explained:

> " 'A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did.' " *Mower v. State*, 750 P.2d 679, 680–81 (Wyo.1988), *aff'd on collateral issue* 770 P.2d 233 (Wyo.1989), [quot]ing *Martinez v. State*, 611 P.2d 831, 838 (Wyo.1980).

*Swackhammer*, 808 P.2d at 224. All that is necessary for a probation to be revoked is the court's conscientious conclusion, after the court hears the facts, that the violation occurred. *Longwell v. State*, 705 P.2d 336, 338 (Wyo.1985); *Ketcham*, 618 P.2d at 1359.

Appellant claims that the court failed to consider her testimony demonstrating that she *did not* willfully consume alcohol. In the initial probation revocation hearing, Appellant did not introduce any evidence indicating that she had not willfully consumed alcohol. The only evidence concerning her lack of willfulness was the probation officer's testimony relating his conversation with Appellant whereby she denied consuming any alcohol but admitted maybe drinking some spiked lemonade. Only at her subsequent mitigation hearing did Appellant testify that she had not knowingly consumed any alcohol.

Arguably, Appellant cannot complain that the district court failed to consider her lack of willfulness when she did not introduce any evidence on the subject at her initial probation revocation hearing. However, we do not need to decide this question because, even if we assume that Appellant's testimony at the subsequent mitigation hearing adequately raised the issue of her lack of knowledge, the State introduced sufficient evidence to support a determination that she willfully consumed alcohol. Four separate breathalyzer examinations revealed that Appellant had consumed a considerable amount of alcohol. Both Mr. Roncalio and the sheriff's deputy testified that Appellant's breath smelled of alcohol. Appellant claimed that she had consumed a single sixteen-ounce glass of possibly spiked lemonade, yet her blood alcohol content was .151%. Mr. Roncalio testified that, in his opinion, someone whose blood alcohol was over the legal limit would be aware that he had consumed alcohol and that Appellant may have tasted the alcohol in the lemonade. Mr. Roncalio further testified: "Based on my experience, it's very improbable that she would have consumed that much alcohol and not known." The court could have reasonably inferred from the evidence presented that Appellant willfully consumed alcohol in violation of her probation.[2] We discern nothing in the record to indicate that the district court's judgment was less than conscientious, nor is there any indication that the court abused its discretion by revoking Appellant's probation.

Appellant next contends that the district court erred by failing to credit both the minimum and maximum terms of her sentence for the 250 days she spent in the S.T.O.P. When imposing a sentence following a probation revocation, the district court is not required to take into account the time a defendant served on probation. *McFarlane v. State*, 781 P.2d 931, 932 (Wyo.1989) (per curiam). Despite the rule in *McFarlane*, we have recognized in prior cases that, when a defendant, as a probation condition, is placed in an environment from which a charge of escape would lie, he would be entitled to credit against his sentence for the time he spent in that environment if his probation were subsequently revoked. *Craig v. State*, 804 P.2d 686, 688 (Wyo.1991); *Prejean v. State*, 794 P.2d 877, 879 (Wyo.1990).

In *Prejean*, the defendant was required to spend his first year of probation in a community correctional facility. After completing nearly six months at the community correctional facility, the defendant violated his probation conditions by escaping. The trial court revoked his probation but refused to grant credit against his sentence for the time he served in the community correctional facility. On appeal, we held: "[U]pon being sentenced to the penitentiary for violation of probation, one who has served time as a resident in a community correctional facility ... is entitled to credit for that time served." *Prejean*, 794 P.2d at 878. We determined that time spent in a community correctional facility should count as time served if a charge of escape would lie, and, since a resident of a community correctional facility could be charged with escape from detention pursuant to Wyo.Stat. § 7–18–112 (1987), we held that the defendant was entitled to receive credit.

In the present case, Appellant argues that she should be granted credit against her sentence pursuant to *Prejean* because the S.T.O.P. is essentially the same as a community correctional facility. As previously noted, *Prejean* requires a charge of escape to lie before a probationer is entitled to receive credit. Appellant cites no authority under which she could have been charged with escape. Unlike in *Prejean*, Appellant could not be charged with escape pursuant to § 7–18–112 because the

---

**2.** As support for her argument that the court failed to consider testimony indicating a lack of willfulness, Appellant cites to the judge's comment that "as long as there is some alcohol in the system there is a violation of probation." Read in context, the judge's comment did not imply that willfulness was not a factor but referred to the fact that any level of alcohol may be sufficient to revoke probation; the blood alcohol level did not need to be over a certain limit.

S.T.O.P. is not a community correctional facility. Wyo.Stat. § 7–18–102(a)(i) (1987) defines a community correctional facility or program as being "a community based or community-oriented facility or program which is operated either by a unit of local government or by a nongovernmental agency." The S.T.O.P. is administered by the Wyoming Department of Probation and Parole, which is neither a local government nor a nongovernmental agency.

Appellant could also not be charged with escape from the S.T.O.P. pursuant to Wyo. Stat. § 6–5–206(a) (1988): "A person commits a crime if he escapes from official detention." Official detention is defined in Wyo.Stat. § 6–5–201(a)(ii) (1988) as being an

> arrest, detention in a facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or detention in any manner and in any place for law enforcement purposes. *"Official detention" does not include supervision on probation or parole or constraint incidental to release on bail."*

(Emphasis added.) The statutory definition of official detention expressly omits probation supervision. The S.T.O.P.'s home electronic monitoring system, while admittedly being more intense than typical probation, still constitutes probation supervision, thus foreclosing a charge of escape pursuant to § 6–5–206. *Cf. Peper v. State,* 768 P.2d 26 (Wyo.1989).

Appellant maintains that the S.T.O.P. conditions are just as stringent as those in a community correctional facility and warrant the same credit for time served. We find it difficult to compare the S.T.O.P. to a hypothetical community correctional facility. The record contains practically no information concerning how Appellant's actual electronic monitoring was accomplished or how confining it was. An additional difficulty in comparing the two is that community correctional facilities, drug rehabilitation facilities, and "halfway houses" vary in their levels of restrictiveness. While certain similarities may exist between home detention and a particular community correctional facility, Wyoming grants credit for the time spent in those environments from which a charge of escape would lie, and a charge of escape would not lie in this case. *Craig,* 804 P.2d at 688; *Prejean,* 794 P.2d at 879.

Appellant also argues that our decision in *Renfro v. State,* 785 P.2d 491 (Wyo. 1990), entitles her to receive credit for the time she spent in the S.T.O.P. 785 P.2d at 498. She bases her argument upon the following comment from *Renfro:*

> We adopt the goal of the American Bar Association Standards for Criminal Justice for "the purpose ... to end ... technical distinctions by granting a comprehensive credit that treats all periods of confinement attributable to the underlying criminal transaction as equivalent, no matter what label is attached to such incarceration. To this end, [we would] require[ ] the credit to be offset against both the minimum and maximum terms imposed...." III ABA Standards for Criminal Justice 18.310 (2d ed. 1980).

*Id. See also* Standard 18–4.7, III ABA Standards for Criminal Justice (2d ed. 1980), *adopted in Renfro,* 785 P.2d at 498 n. 10, and in *Ramirez v. State,* 800 P.2d 503, 504 (Wyo.1990). Appellant claims that her time spent in the S.T.O.P. constituted a period of confinement which directly related to her original conviction.

Appellant's argument is similar to the analysis used by other courts. In many jurisdictions, a probationer's entitlement to receive credit for the time he spent in a restrictive environment hinges upon whether the particular environment was sufficiently restrictive to constitute "custody" or "confinement." *See generally* Lee R. Russ, Annotation, *Defendant's Right to Credit for Time Spent in Halfway House, Rehabilitation Center, or Other Restrictive Environment as Condition of Probation,* 24 A.L.R.4th 789 (1983). Wyoming's rule is similar to that of these other jurisdictions, but, rather than engaging in case-by-case comparisons, we have adopted a rule which, in essence, defines custody as

an environment from which a charge of escape would lie.

Since we have adopted a rule which defines custody as an environment from which a charge of escape would lie, we do not need to consider whether the conditions of the S.T.O.P. were sufficiently restrictive to constitute custody. Nevertheless, it is interesting to note that other jurisdictions have found that home detention is not sufficiently restrictive to constitute custody or incarceration. *State v. Muratella*, 240 Neb. 567, 483 N.W.2d 128 (1992); *Commonwealth v. Kriston*, 527 Pa. 90, 588 A.2d 898 (1991); *People v. Denning*, 204 Ill.App.3d 720, 149 Ill.Dec. 890, 562 N.E.2d 354 (1990); *People v. Reinertson*, 178 Cal. App.3d 320, 223 Cal.Rptr. 670 (1986). *Cf. State v. Speaks*, 119 Wash.2d 204, 829 P.2d 1096 (1992) (en banc).

Affirmed.