**Tracy Michael MASON, Appellant (Defendant),**

v.

**STATE of Wyoming, Appellee (Plaintiff).**

**No. 5401.**

Supreme Court of Wyoming.

July 23, 1981.

Michael H. Schilling, Appellate Counsel, Wyoming Public Defender Program, Laramie, for appellant.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and Allen C. Johnson, Senior Asst. Atty. Gen., Cheyenne, for appellee.

Before ROSE, C. J., RAPER, THOMAS and ROONEY, JJ., and O'BRIEN, District Judge.

ROSE, Chief Justice.

The issue in this case is whether the defendant in a probation-revocation hearing

has the right to confront and cross-examine the witnesses against him. Here, the crucial evidence against the probationer was presented in the form of hearsay testimony. The State made no attempt either to subpoena the witnesses or to make any valid excuse for their absence.

At the revocation hearing, the district court found that appellant Tracy Michael Mason violated the terms of his probation by entering the Senior Citizens Center in Casper and illegally removing a stereo system. While this finding would constitute a proper basis for revocation of appellant's probation, we will reverse and remand this case to the district court for further consideration on the grounds that appellant was denied his right to confront and cross-examine the witnesses against him, as such right is guaranteed by the Fourteenth Amendment to the United States Constitution.

## FACTS

On July 28, 1980, Tracy Michael Mason was sentenced to a term of not less than three years and not more than four years in the Wyoming State Penitentiary. This sentence was the result of two separate criminal prosecutions. As part of a plea agreement, the defendant was placed on probation for two years. The conditions of the defendant's probation provided that (1) he would be subject to the supervision of the Wyoming State Department of Probation and Parole; and (2) he would obey all local, state and federal laws during the probation period. Violation of either of these conditions would be grounds for revocation of his probation. The defendant had been on probation for little more than one week when the Natrona County Attorney filed a petition for revocation alleging that a complaint and warrant had been issued on July 25, 1980, charging the defendant with the burglary of the Senior Citizens Center on July 22, 1980. At the probation-revocation hearing held on August 22, 1980, the State called only two witnesses: the defendant's probation officer and a Casper police officer, James Cooper. While the probation officer's testimony is not important to this

appeal, the testimony of Officer Cooper lies at the heart of appellant's complaint.

Officer Cooper testified to the contents of a statement taken by him from Bruce Bexell, a witness who allegedly saw someone place a stereo under some bushes and later take the stereo to the press box at the Natrona County High School stadium. Cooper also testified to information acquired during a discussion with the arresting officer involved in the investigation. Both of these witnesses had testified at the preliminary hearing on the charges of burglary of the Senior Citizens Center, but neither witness was present at the probation-revocation hearing. The State neither offered an explanation for the failure to produce the witnesses, nor offered a transcript of the testimony from the preliminary hearing. Rather, Officer Cooper's testimony was based exclusively upon his recollection of his conversations with the witness, Mr. Bexell, and the arresting officer, together with his recollection of the proceedings at the preliminary hearing.

Mr. Bexell's description, as related by Officer Cooper, stated only that the burglar was approximately six feet tall, 18 to 20 years old, had long hair, and work dark clothes. The officer also testified that Mr. Bexell had only identified Mr. Mason from a photographic lineup, and had never identified him in person.

Officer Cooper then recalled a conversation with Officer Hazen, the arresting officer, who reportedly saw the defendant closing one of the windows at the press box at the Natrona County High School stadium on the night of the burglary. The stolen stereo was later recovered from the press box.

Defense counsel attempted to raise an issue of misidentification by the witness, Mr. Bexell, and to point out conflicts in the descriptions given by Mr. Bexell and the arresting officer. He was unable to do so because Cooper could not recall the exact testimony of the witnesses. Defendant's counsel made repeated objections to the testimony of Officer Cooper on the grounds that it was unreliable hearsay evidence, and

that the defendant was being denied his right to confront the witnesses against him.

On the basis of Officer Cooper's hearsay testimony, the district court revoked the defendant's probation and reinstated the original sentence. The defendant has appealed that order on the grounds that the determination was made solely on the basis of the hearsay testimony thus denying him the right to due process and the right to confront and cross-examine witnesses against him.

## THE LAW

■ The law governing probation revocation is controlled by the Fourteenth Amendment right to due process under the law, as well as by Wyoming statute and case law. In *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the United States Supreme Court held that the Fourteenth Amendment requires that a probationer be given a hearing before his probation may be revoked. Gagnon adopted the reasoning of an earlier case, *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), which extended the right of a prerevocation hearing to parolees. In both the parole and probation settings, the Court held that parole and probation revocation were not criminal prosecutions and, therefore, did not give rise to the full panoply of rights available under the Sixth Amendment. Nevertheless, parole- and probation-revocation proceedings may result in a loss of liberty, thereby triggering the fundamental protections of the due-process clause of the Fourteenth Amendment. *Gagnon*, supra, and *Morrissey*, supra. The loss of liberty suffered by the probationer or parolee is not the loss of "absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observation of special * * * restrictions." *Morrissey*, supra, 408 U.S. at 480, 92 S.Ct. at 2600.

■ Due process requires that the defendant in revocation cases be given a two-part hearing to determine if (1) there are verified facts proving a violation of the release agreement; and (2) whether in light of a proven violation the probation should be revoked. This hearing must be preceded by a written notice of the claimed violations. Other protections that attach to this hearing include the guarantee of disclosure of the evidence against the defendant, the right to call witnesses and present documentary evidence and the right to confront and cross-examine adverse witnesses. *Morrissey*, supra, 408 U.S. at 489, 92 S.Ct. at 2604.

The method provided for by law under § 7-13-409, W.S.1977, allows for the county attorney (as in *Knobel v. State*, Wyo., 576 P.2d 941 (1978)) or the administrative officer (as in *Weisser v. State*, Wyo., 600 P.2d 1320 (1979)) to file a petition *with the district court*, requesting probation revocation. In the latter instance, the district court must hold a hearing—as it did here—to determine whether the conditions of the probation agreement had been violated and whether probation should be revoked. We upheld the validity of this procedure in *Weisser v. State*, supra, as well as in *Knobel v. State*, supra.

■ The appellee contends that Officer Cooper's hearsay testimony should be allowed since Rule 33(f), W.R.Cr.P., specifically suspends the application of the hearsay rules at probation- or parole-revocation hearings. This argument misses the point. The purpose for allowing hearsay in these hearings is to aid the court in determining whether probation or parole should be revoked *after the determination has been made that the agreement has been violated.*[1] The determination of whether the defendant violated his release agreement must be based on verified facts. *Morrissey v. Brewer*, supra, 408 U.S. at 484, 92 S.Ct. at 2601. While hearsay is not categorically barred from revocation hearings, the hearsay admitted in this case was improper.

---

1. When the court or probation board turns its attention to the second stage of the revocation hearing, hearsay evidence will be useful in determining whether or not to revoke probation in light of the prior finding of a probation violation.

It is impossible for the defendant to test the accuracy and truth of the State's witnesses if they are not at the hearing to give their testimony. It is clear from the record before us that defense counsel was frustrated in his attempts to demonstrate an alternative theory as to who committed the burglary at the Senior Citizens Center because he was unable to effectively cross-examine the State's witnesses. Officer Cooper's incomplete memory made the State's case unassailable. Both the defendant and the social system have a stake in making sure the factual determination in a revocation hearing is not an arbitrary one but is based on facts which pass the *Morrissey*, truth-seeking test of cross-examination, *Morrissey v. Brewer*, supra, 408 U.S. at 484, 92 S.Ct. at 2601. In this case the only evidence presented was in the form of hearsay which the defense was unable to test and verify. This was a clear violation of the appellant's right to due process. *Anaya v. State*, Nev., 606 P.2d 156 (1980). The State must make a good-faith attempt to produce the witnesses at a probation- or parole-revocation hearing or else show cause why they cannot appear. If for some valid reason a witness is unavailable, whether or not the information may be introduced through hearsay will be determined by the use of a balancing test. This test will weigh the defendant's interest in confronting and cross-examining the witnesses against him with the practical difficulties of producing the witness. *Anaya v. State*, supra.

If the evidence is to be introduced to establish the substantive violation of a condition of probation or parole, the defendant's interest in questioning the actual source of the information is far stronger than if the evidence relates only to the defendant's general character while on probation. Id. at 158. The form of the hearsay testimony is also important in striking the due-process balance. While not every use of hearsay evidence violates the due-process clause, the court or probation board must carefully weigh the evidence to be sure it bears strong indicia of reliability. If in the present case the State had been unable to produce the witnesses at the revocation hearing, testimony might have been introduced from the preliminary hearing on the burglary, provided, of course, this testimony had been tested by cross-examination or by questioning that was the equivalent of cross-examination. *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). The record does not show whether the preliminary hearing included such questioning. In any event, the testimony from the preliminary hearing was not offered at the revocation hearing. Needless to say, Officer Cooper's recollections of the testimony at the preliminary hearing are not an acceptable substitute for a transcript of the testimony.

## PLAIN ERROR

Appellee asks us to reject this appeal on the grounds that the due-process violation was not properly objected to during the hearing. As appellee reads the record, the defense counsel objected to the evidence only on the grounds that it was hearsay and that it violated the confrontation clause of the Sixth Amendment. Following this reasoning, the objections were properly overruled, on the first point, since Rule 33(f), W.R.Cr.P., makes the hearsay rules inapplicable during probation-revocation hearings and, on the second point, because the Sixth Amendment only applies to criminal prosecutions and probation-revocation hearings have been held not to be criminal prosecutions. *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967).

Appellee's reasoning does not persuade us for two reasons. First, defense counsel repeatedly objected to Officer Cooper's testimony on the grounds that it denied the defendant's right to confront and cross-examine the witnesses. These are precisely the rights that we find were affected by the introduction of the hearsay testimony. The court did not ask for argument on the question of which amendment to the United States Constitution provided the basis for the claimed right to confront the witness. Defense counsel's objection

was sufficient to alert the court to the problem before it and to the proper legal remedy.

■ Even if we were to hold that the objections were improper and insufficient to raise the issue before the court, we would reach the question of the violation of the defendant's due-process rights under the plain-error doctrine. "Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Rule 7.05, W.R. A.P.; Rule 49, W.R.Cr.P.

■ This court's opinion in *Daellenbach v. State*, Wyo., 562 P.2d 679 (1977), sets out a three-part test to determine when the plain-error doctrine should apply. For error to qualify as plain error, there must first be a clear record of what happened at the hearing. Second, there must be a clear and unequivocal rule of law shown to exist. Third, the facts of the case must clearly and obviously transgress the rule of law. See also *Hampton v. State*, Wyo., 558 P.2d 504 (1977). Once this three-part test is satisfied, it still must be shown that a substantial right of the accused has been adversely affected. These criteria apply even when a constitutional violation is alleged, as in the present case.

We think each of the three criteria, as well as the violation of a substantial right, have been met in this case. The rule of law was firmly established several years ago in *Morrissey* and *Gagnon*. The violation of this rule is obvious and is clearly shown in the record of the proceedings. Finally, there is no doubt that the due-process right to confront and cross-examine witnesses is a substantial right that has been denied in this case. For these reasons, the plain-error doctrine allows us to consider this constitutional deprivation even if not raised in the court below.

The order of the district court is reversed and this case is remanded for further proceedings consistent with this opinion.

1. Rule 33(f), W.R.Cr.P. provides:
   "The court shall not revoke probation except after a hearing at which the defendant shall be present and apprised of the grounds on

ROONEY, Justice, specially concurring, with whom RAPER, Justice, joins.

I concur in the result reached by the majority opinion, but I am not entirely in accord with the rationale expressed therein.

The issue here presented is whether or not appellant was afforded a due process hearing upon revocation of his probation, specifically in connection with whether or not he was afforded sufficient confrontation with witnesses.

The majority opinion makes reference to a "two-part hearing to determine if (1) there are verified facts proving a violation of the release agreement; and (2) whether in light of a proven violation the probation should be revoked." It then indicates that hearsay evidence from non-confronted witnesses is admissible *only* during the second part. It suggests that Rule 33(f), W.R. Cr.P.[1] pertains only to the second part. It refers to *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) as supportive thereof.

I do not believe that either the two-part hearing referred to by the majority opinion or Rule 33(f) is pertinent to this case. I believe that the confrontation of witnesses requirement enunciated in *Morrissey* is narrower than established by the majority opinion.

Finally, I find it a very close question as to whether or not the non-hearsay evidence in this case was sufficient to support the discretion exercised by the trial court in its finding of a violation of the probation conditions. I find it was not sufficient, not only because of the loose procedural context in which the matter developed but in hopes that such finding will help avoid the same potentials for error and, thus, for appeal in future revocation proceedings.

I have no quarrel with the fact that *Morrissey* referred to the thought process

which such action is proposed. The defendant may be admitted to bail pending such hearing."

whereby the violation is first ascertained and then the decision is made as to what to do about it, and that this second step "is not purely factual but also predictive and discretionary." 92 S.Ct. at 2599–2600.

However, the "two important stages in the typical process of * * * revocation" to which the language in *Morrissey* was primarily addressed are headed therein as *"(a) Arrest of Parolee and Preliminary Hearing,"* and *"(b) The Revocation Hearing."* The concern in each instance was with the due process requirements in the determination of whether or not the parole agreement had been violated.

In my specially concurring opinion in *Weisser v. State*, Wyo., 600 P.2d 1320, 1324 (1979), I noted that:

" * * * The *Morrissey* and *Gagnon* cases recognized the parole and probation status as 'liberty and property' rights under the constitution, and they held that deprivation thereof could be accomplished only by virtue of due process. In the *Morrissey* case the Court noted at page 2600 of 92 S.Ct. that revocation of parole (and in the *Gagnon* case, of probation).

" 'is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to revocations. * * * ' "

After recognizing that "[o]nce it is determined that due process applies, the question remains what process is due" and that "due process is flexible and calls for such procedural protections as the particular situation demands," the court in *Morrissey* addressed the necessity for a preliminary hearing by a disinterested person near the place of violation or arrest as promptly as convenient.[2] Such proceeding was described to be:

" * * * in the nature of a 'preliminary hearing' to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions. [Citation.]" 92 S.Ct. at 2602.

" * * * At the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer. *On request of the parolee*, person who has given adverse information on which parole revocation is to be based is to be made available for questioning in his presence. However, if the hearing officer determines that an informant would be subjected to risk or harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination." (Emphasis added.) 92 S.Ct. at 2603.

In addressing the second stage, the revocation hearing itself,[3] the following minimum requirements of due process, without creating "an inflexible structure for parole revocation procedures," were set forth in *Morrissey* at page 2604 of 92 S.Ct.:

" * * * (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (*unless the hearing officer specifically finds good cause for not allowing confrontation*); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. We emphasize there is no thought to equate this second state of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; *the process should be flexible enough to consider*

---

2. The preliminary hearing can be before a justice of the peace, county judge, or other designated official in this or another state.

3. A preliminary hearing is not required if the revocation hearing itself is held "as promptly as convenient after arrest" and "reasonably near the place of the alleged * * * violation or arrest," or if the probationer or parolee has already been convicted of another crime. *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 278, n. 7, 50 L.Ed.2d 236 (1976); *Mack v. McCune*, 551 F.2d 251 (10th Cir. 1977); *Coronado v. United States Board of Parole*, 551 F.2d 275 (10th Cir. 1977).

*evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.*" (Emphasis added.)

Obviously, the right of confrontation and cross-examination in a revocation hearing is not as positive as it is in a criminal proceeding. The admission of hearsay evidence without confrontation of witnesses does not ipso facto amount to error in revocation proceedings.

Nor do I read Rule 33(f), W.R.Cr.P.[4] as having anything to do with hearsay evidence or the right to confront witnesses. It simply requires the presence of the defendant at the revocation hearing and the necessity of notice to him of the ground alleged as a basis for revocation. It does not concern other aspects of the hearing.

In the case before us, testimony in the nature of hearsay was before the court. Not only was there nothing in the record to show good cause for allowing such evidence, but the record indicated the probable availability of the original sources of the evidence. But, this was not a criminal proceeding. The court could properly disregard such evidence and revoke the probation on the basis of non-hearsay evidence placed before it. In this case, the non-hearsay evidence consisted of the following: A burglary of the Casper Senior Citizens Center was reported to the police. Some of the items taken in the burglary were recovered by the police in the press box at the high school stadium. Among the recovered items was a tape recorder with a tape on which a voice was identified by a witness as that of appellant. Appellant was later arrested during the nighttime as he was raising a window to enter the press box. Appellant contended that he was entering the press box to recover a sleeping bag which he loaned to a friend who was using it there.

This evidence would be insufficient to sustain a criminal conviction inasmuch as it did not connect defendant with the burglary itself or even with knowledge of it. However, the standard of proof in a probation or parole revocation case is different.

"The sufficiency of the evidence to sustain an order revoking probation is a matter within the sound discretion of the trial court and its action will be reversed only upon a clear showing of abuse of discretion. The court cannot act arbitrarily, however, or according to whim or caprice." 21 Am.Jur.2d, Criminal Law § 568 (1965).

The question as to sufficiency of the evidence necessary to support a finding of violation of parole or probation conditions is aggravated when the condition alleged to have been violated is that which prohibits additional unlawful behavior. In such instances, analysis is influenced by the concept of "innocence until proven guilty." Indeed, the Wyoming Parole Board requires a conviction before it revokes parole on this basis. Such is not usually required in connection with revocation of probation. In holding that the court could proceed "to both preliminary and final revocation hearings" before trial of criminal charges out of which arose the alleged probation violations, one federal district court referred to the required standard of proof as follows:

"In such final hearing, the usual rules of evidence need not be applied, [citation], and it is not required that the evidence have shown beyond a reasonable doubt that Mr. Mills violated the conditions of his probation, [citation]. If the evidence satisfies the presiding judge that the conduct of the probationer has not measured-up to the terms and conditions of his probation, in its discretion, the Court will revoke the probation. [Citation.] * * *" *United States v. Mills*, 444 F.Supp. 26, 27 (E.D.Tenn.1977).

When the condition alleged to have been violated is other than that which prohibits additional unlawful behavior, the proof of violation is usually more direct and less involved. Refusing to make reports or contacts with the parole officer, refusing or leaving employment, leaving the state without permission of the parole officer and similar transgressions involve evidence which is not circumscribed by the safeguards attributed to criminal accusations.

4. See footnote 1.

The failure to properly place all of the information before the court pertinent to consideration of appellant's status exemplifies the looseness which I find in the procedure in this case. The court conditioned appellant's probation on obedience of all federal, local and state laws—the condition alleged to have been violated. It also conditioned probation on obedience of the "Department of Probation and Parole's * * * Rules and Regulations." The departmental operation rules have no direct reference to a probationer's conduct. There are no rules and regulations in the record which the probationer has specifically agreed to follow.[5]

The record reflects the likelihood of violation by appellant of usual probation requirements other than violation of laws. It does not reflect, however, his understanding or agreement relative thereto. He was not notified that he was charged with these other violations and evidence thereof was not received.

This, coupled with the failure to proffer available witnesses able to give non-hearsay testimony which apparently would definitely establish by credible evidence appellant's involvement in the burglary characterizes the procedure as loosely prepared and processed. The court did not have the advantage of all of that which it should have had in gauging appellant's actions and that which should result therefrom.

For this reason, I agree that the case should be reversed and remanded for an additional hearing consistent, insofar as presently possible, with this specially concurring opinion.

---

5. The specific conditions of probation should be made a matter of record, either through enumeration at the time of sentencing, or by use of a form with the information thereon acknowledged by the probationer. In addition to listed special conditions, the Parole Agreement and Parole Grant form used by the Parole Board specifies the following general conditions:

"If parole is granted to me by the Board of Parole of the State of Wyoming, I hereby agree to the following terms and conditions thereof:

"1. I shall make written monthly reports to my supervising officer promptly at the time designated by him and upon the form provided, and I shall furnish the full information requested on said form.

"2. Additionally, I shall make personal reports and contacts to and with my supervising officer as directed by him.

"3. I shall not violate any laws or ordinances (including the use or possession of controlled substances as defined by Wyoming law).

"4. I shall not incur any debts or obligations or execute any contracts without permission of my supervising officer.

"5. I shall not marry, file for divorce, withdraw from school, change residence, change employment, purchase an automobile, purchase real property, or purchase any item exceeding the cost of $200.00 without permission of my supervising officer.

"6. I shall not possess or use a firearm.

"7. I shall not leave the state of Wyoming without permission of my supervising officer.

"8. I shall make every reasonable effort to comply with the advice and directions of my Parole Officer relative to my business, social and recreational activities, when the same are given to me for the purpose of avoiding disputes, conflicts, or activities which, in turn, are likely to result in violation of one or more of the other conditions of this agreement."