2015 VT 87

## State of Vermont v. Stephen L. Eldert

[125 A.3d 139]

No. 14-141

Present: **Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.**

Opinion Filed June 19, 2015

522

*John R. Treadwell*, Assistant Attorney General, Montpelier, and *Kevin R. Klamm*, Rutland County Deputy State's Attorney, Rutland, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, and *Kerry B. DeWolfe*, Appellate Defender, Montpelier, for Defendant-Appellant.

¶ 1. **Eaton, J.** Defendant Stephen L. Eldert appeals the revocation of his probation resulting from a violation of a probation condition that he not purchase, possess, or consume alcohol. We conclude that the court erred in admitting unreliable hearsay evidence at the revocation hearing, and therefore reverse.

¶ 2. In October 2004, defendant pled guilty to lewd and lascivious conduct, 13 V.S.A. § 2601, unlawful restraint in the second degree, *id.* § 2406(a), and multiple violations of conditions of release, *id.* § 7559(e). The court sentenced defendant to two to ten years, all suspended, and placed defendant on several conditions of probation, including condition 1 that he "must not buy, have or drink any alcoholic beverages."

¶ 3. At some point thereafter, defendant's probation supervision was transferred to Delaware through the Interstate Compact

Offender Tracking System (ICOTS).[1] While in Delaware, defendant was convicted of several crimes and placed on probation in addition to his ICOTS-supervised Vermont probation. Subsequently, a Delaware court found defendant in violation of his Delaware probation conditions, revoked his probation, and imposed the underlying suspended sentence. On April 26, 2013, while defendant was still serving his Delaware sentence, the Delaware Department of Corrections informed defendant's Vermont probation officer that it was no longer willing to supervise his Vermont probation upon release from his Delaware sentence.

¶ 4. In May 2013, defendant's Vermont probation officer filed a violation of probation complaint in the superior court, criminal division. Relying on documentation received from Delaware through ICOTS indicating that "Mr. Eldert admitted to using alcohol, Percocet, and cocaine," the complaint alleged that defendant violated condition 1. The complaint requested a warrant to return defendant to Vermont once he served his prison sentence in Delaware. A warrant was issued in September 2013, and defendant was brought back to Vermont. Defendant denied the allegations that he had violated condition 1 while in Delaware by consuming alcohol, and was incarcerated in Vermont pending a merits hearing.

¶ 5. At the State's request, approximately one hour prior to the scheduled start of the merits hearing, counsel for both parties met on the record with the court to discuss the State's planned use of hearsay evidence that is the subject of this appeal. The State informed the court that its sole evidence in support of the alleged

---

[1] ICOTS is a "web-based system that facilitates the transfer of supervision for probationers and parolees" between the fifty states and three territories that are signatories to the Interstate Compact for Adult Offender Supervision (ICAOS). See *What is ICOTS?*, Interstate Comm'n for Adult Offender Supervision, http://www.interstatecompact.org/ICOTS/WhatisICOTS.aspx (last visited May 22, 2015). The purpose of ICAOS, which Vermont enacted in 2000, is:

> through means of joint and cooperative action among the compacting states . . . to provide the framework for the promotion of public safety and protect the rights of victims through the control and regulation of the interstate movement of offenders in the community; . . . to provide for the effective tracking, supervision and rehabilitation of these offenders by the sending and receiving states; and . . . to equitably distribute the costs, benefits and obligations of the compact among the compacting states.

28 V.S.A. § 1351(a).

violation was defendant's Vermont probation officer "testifying as to information on what occurred in Delaware by virtue of documentation and direct communication with the [probation officers] there." The State requested a "weather report" from the court as to whether the proposed hearsay evidence was reliable and admissible, stating it was "conceivable that the court might want direct testimony from a Delawarean," adding "I don't think it's necessary, but the court's preferences are my first wish." Defendant objected to a continuance for the State to procure live testimony, explaining that the defense was ready to proceed as scheduled. The court declined to rule on the matter prior to the start of the hearing, stating "well, we'll . . . see what happens."

¶ 6. During the merits hearing, defendant's Vermont probation officer, the sole witness for the State, testified that she received various documents through ICOTS indicating that defendant had violated condition 1 of his Vermont probation while in Delaware. In support of its violation-of-probation complaint, the State sought to admit these documents through defendant's probation officer's testimony as State's exhibits 1, 2, and 3.

¶ 7. State's exhibit 1, dated November 2, 2012, is captioned "Violation Report." The report was purportedly authored by defendant's Delaware probation officer, and then reviewed and approved by a Delaware Department of Corrections supervisor. The report alleges violations of two of defendant's Delaware probation conditions, the first prohibiting possession or consumption of a controlled substance or other dangerous drugs unless prescribed lawfully, and the second requiring compliance with "any special conditions imposed by your supervising officer, the Court and/or the Board of Parole." The report indicates, in relevant part, that defendant made three admissions: (1) "[o]n 10/19/12, Mr. Eldert admitted to using alcohol"; (2) "[o]n 10/26/12 he was released from detox and admitted to drinking alcohol (vodka) that night"; and (3) "[o]n 11/1/12, when confronted with the fact the he smelled strongly of alcohol, Mr. Eldert admitted to drinking one pint of vodka the night before." The report does not make clear to whom or under what circumstances defendant made the admissions. The State presented exhibit 1 as a single report consisting of four pages. The report is facially incomplete, and confusingly, there are five pages included in the report, only the

last three of which are numbered.[2] The fourth page of the report, labeled "4 of 5" and dated April 26, 2013, appears to be an incomplete, unsigned order from the Kent County Superior Court acknowledging the alleged violation of probation, executing a warrant, and setting bail at $9,000. The report and the court order, dated seventeen months apart, were not signed, notarized, certified, otherwise attested to, or showed any indication that they had been filed in court.

¶ 8. State's exhibit 2 is an ICAOS form entitled "Offender Violation Report."[3] The form, addressed to "Vermont" and dated April 26, 2013, stated a violation of probation hearing was held on March 1, 2013 and that "[o]ffender was found in violation." The form contains a field labeled "Current Specific Violations," where writers are to "[s]pecify [the] violation and provide all details to support the violation below, including evidence, witnesses' names, and witnesses' contact information," which was left blank. The form identifies Daniel Welsh as defendant's Delaware probation officer, but is unsigned, uncertified, contains no indication it is an official document, and has no information connecting it to defendant's alleged admissions of drug and alcohol abuse.

¶ 9. State's exhibit 3 is entitled "Violation of Probation Sentence Order." The supposed order is dated March 1, 2013, and simply states: "defendant is found in violation." The report has no information concerning the basis for the violation, and makes no mention of defendant's alleged consumption of alcohol. There is nothing indicating the order is an official court record, such as an official stamp or seal. Although the document identifies the presiding judge, it does not provide any information about the

---

[2] The transcript from the revocation hearing indicates that the State offered, and the court admitted, three exhibits at the hearing. On appeal to this Court, no documents in appellant's printed case contain labels indicating their admission as exhibits. The transcript reflects that the documents admitted as State's 1, 2, and 3 totaled ten pages; however, appellant submitted eleven pages as part of his printed case. This is most likely attributable to the fact that State's 1, as presented at trial, contained four pages, while in appellant's printed case it consists of five.

[3] Once again, there is a discrepancy between the number of pages in State's 2 as presented at the revocation hearing, and as contained in appellant's printed case. At the hearing, the State presented exhibit 2 as consisting of four pages, while in the printed case the report appears to include three pages. It is unclear whether the State intended to include a duplicate of the first page of State's 3, the alleged violation of probation sentence order (discussed below), as an attachment to exhibit 2, thus accounting for the fourth page presented at the hearing.

nature of the violation. The document is also unsigned, uncertified, and contains nothing linking it to the violation report other than defendant's personal information and the case number.

¶ 10. At the Vermont probation-revocation hearing, defendant's Vermont probation officer testified that during the course of her supervision she never spoke to defendant or his former Delaware probation officer, Daniel Welsh, whose name appears on the reports. She testified that one week before the hearing on the merits, she spoke with defendant's current Delaware probation officer over the phone who confirmed the information in the reports authored by Mr. Welsh, but who did not have first-hand knowledge of defendant's admissions.

¶ 11. Defendant objected throughout the hearing to his probation officer's testimony and the admission of the documents as unreliable hearsay. Defendant consistently objected to the absence of any witnesses with personal knowledge of his alleged confessions. The only explanation offered by the State was that, "[o]bviously, Delaware has no particular interest in coming to Vermont." The court addressed defendant's confrontation objections by stating that any judges named in the ICOTS documents could not be called as witnesses "to testify about what they did in any proceeding," then moved on to discuss the reliability of the proffered evidence. The court inquired as to whether officer Welsh was still with the Bureau of Community Corrections in Delaware, to which the State responded, "I don't know if Mr. Welsh moved on to greener pastures . . . . More importantly, [defendant's Vermont probation officer] had the documentation on which she brought these charges." Over defendant's objections, the trial court admitted State's exhibits 1, 2, and 3 into evidence and permitted his Vermont probation officer to testify as to their contents. Based on that evidence, the court found defendant violated condition 1 and revoked his probation. This appeal followed.

¶ 12. Defendant makes several arguments in support of his position that the trial court erred in revoking his probation. Specifically, he argues that the court's findings were not supported by the State's evidence at the hearing, and that the court failed to find "good cause" for dispensing with his right to confront adverse witnesses in violation of the Fourteenth Amendment to the United States Constitution and Vermont Rule of Criminal Procedure 32.1.

528

¶ 13. In a probation-revocation proceeding, the State must show, by a preponderance of the evidence, that a probationer violated an express or clearly implied condition. *State v. Decoteau,* 2007 VT 94, ¶ 8, 182 Vt. 433, 940 A.2d 661; see also *State v. Austin,* 165 Vt. 389, 398, 685 A.2d 1076, 1082 (1996) ("The State meets its burden by showing that there has been a violation of the express conditions of probation, or of a condition so clearly implied that a probationer, in fairness, can be said to have notice of it." (citations, quotation marks, and emphasis omitted)). Whether a probation violation occurred is a mixed question of fact and law. *Austin,* 165 Vt. at 398, 685 A.2d at 1082. The trial court must first make findings of fact related to the actions of the probationer, then make "an implicit legal conclusion that certain acts constitute a violation of the probationary terms." *Id.* (quotation omitted). On appeal, we will uphold the trial court's findings of fact if they are fairly and reasonably supported by credible evidence, and will only disturb legal conclusions if they are not reasonably supported by those facts. *Decoteau,* 2007 VT 94, ¶ 8.

¶ 14. We review evidentiary rulings in both civil and criminal trials for abuse of discretion. See *State v. Groce,* 2014 VT 122, ¶ 13, 198 Vt. 74, 111 A.3d 1273 (noting, in reviewing criminal conviction, that "[w]e review the trial court's evidentiary rulings for abuse of discretion."); *Follo v. Florindo,* 2009 VT 11, ¶ 19, 185 Vt. 390, 970 A.2d 1230 (explaining that we review evidentiary rulings in civil trials for abuse of discretion). As a probation-revocation hearing is a hybrid criminal-civil proceeding, we review the admission of evidence in such hearings for abuse of discretion. See *Decoteau,* 2007 VT 94, ¶ 31 (Rieber, C.J., dissenting) (explaining that in a probation revocation proceeding, "[t]he reliability of evidence is essentially a fact specific issue within the trial court's discretion, and therefore subject to reversal by this Court only upon a showing of an abuse of discretion." (quotations omitted)); see also *United States v. Lloyd,* 566 F.3d 341, 344 (3d Cir. 2009); *United States v. Williams,* 443 F.3d 35, 46 (2d Cir. 2006).

¶ 15. We first address defendant's argument that the trial court violated his Fourteenth Amendment right to confrontation in admitting the three sets of ICOTS documents and allowing his Vermont probation officer to testify regarding their contents at the revocation hearing. Defendant argues that these statements constitute unreliable hearsay and thus should have been excluded. Defendant contends that without the hearsay evidence, there is no

support for the court's finding that he violated condition 1 of his probation. For the following reasons, we agree.

¶ 16. ▮ "Hearsay is not categorically inadmissible in a probation-revocation proceeding because the rules of evidence do not apply." *Decoteau*, 2007 VT 94, ¶ 12 (citing V.R.E. 1101(b)(3)). Probationers are, however, entitled to confront adverse witnesses under the Due Process Clause of the Fourteenth Amendment. *Id.* ¶ 12 (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973)); see also V.R.Cr.P. 32.1(a)(2)(D). Therefore, we have held that before a court may deny a probationer the right of confrontation and admit hearsay evidence, it must make an explicit finding on the record that there is "good cause" to do so. *Austin*, 165 Vt. at 396, 685 A.2d at 1081.

¶ 17. ▮ While this Court has not expressly "establish[ed] the limits of what does or does not constitute sufficient good cause for admitting hearsay into evidence," we have consistently recognized that a key factor in making that determination is the reliability of the hearsay evidence sought to be admitted. *Id.*; *Decoteau*, 2007 VT 94, ¶ 12. In both *Austin* and *Decoteau*, we recognized that in addition to the reliability of the hearsay evidence, many courts also consider the State's proffered reason for not presenting live-witness testimony in determining whether there is "good cause" to deny confrontation. *Decoteau*, 2007 VT 94, ¶ 12 n.1 (noting that some courts consider the availability of the declarant, and whether the evidence is offered to prove the central contested issue or is simply peripheral thereto); *Austin*, 165 Vt. at 395, 685 A.2d at 1080 (explaining that reliability is an essential factor but recognizing that consideration of the State's reason for not producing live-witness testimony is also an important consideration (citing, inter alia, *State v. Yura*, 825 P.2d 523, 530 (Kan. 1992) (requiring consideration of both the government's explanation of why confrontation is undesirable or impractical and the reliability of the proffered hearsay evidence); *State v. Casiano*, 667 A.2d 1233, 1239 (R.I. 1995) (same); *Mason v. State*, 631 P.2d 1051, 1056 (Wyo. 1981) (same)). In *Austin*, however, we rejected the view of the federal district court in *Finch v. Vermont District Court* that "reliability and good cause are separate prongs that must independently be met before dispensing with a probationer's confrontation rights." *Austin*, 165 Vt. at 394, 685 A.2d at 1080 (quotation marks omitted) (citing *Finch v. Vt. Dist. Ct.*, No. 90-9, 1990 WL

312576, at *1 (D. Vt. Sept. 24, 1990) (unpub. mem.)). We noted that this view is "not shared by any of the federal circuits that have considered the question," and concluded that the reliability of the proffered hearsay is a "critical factor" to consider when ruling on the admissibility of hearsay in a probation revocation proceeding. *Id.* at 394-95, 685 A.2d at 1080.

¶ 18. In *Austin*, we cited favorably to *United States v. Bell*, in which the United States Court of Appeals for the Eighth Circuit recognized that in order to find "good cause" in a probation-revocation proceeding, "the trial court . . . must balance the probationer's right to confront a witness against the grounds asserted by the government for not requiring confrontation." 785 F.2d 640, 642 (8th Cir. 1986). The *Bell* court noted that "[a]s is true of any balancing test, it is not possible to articulate fixed rules on what the government must show to establish 'good cause' in every case." *Id.* at 642-43. "However, there are several factors which should be evaluated in examining the basis cited by the government for dispensing with confrontation." *Id.* at 643. Specifically, the court relied upon two factors to determine whether there was "good cause." The first is the government's explanation for "why confrontation is undesirable or impractical." *Id.* "For example, the government might contend that live testimony would pose a danger of physical harm to a government informant," or "that procuring live witnesses would be difficult or expensive." *Id.* The second factor is the reliability of the evidence offered by the government in place of live testimony. *Id.* As the *Bell* court summarized:

> [W]here the government demonstrates that the burden of producing live testimony would be inordinate *and* offers in its place hearsay evidence that is demonstrably reliable, it has made a strong showing of good cause. Where, on the other hand, the government *neither* shows that presenting live testimony would be unreasonably burdensome *nor* offers hearsay evidence that bears indicia of reliability, the probationer is entitled to confrontation.

*Id.* (emphases added). We conclude that *Bell* sets forth the appropriate test for determining whether the State has met its burden for establishing "good cause" to deny a probationer the

right to confront adverse witnesses.[4] Therefore, in a usual case, a trial court must, at a minimum, evaluate both the reason offered by the State for not providing live testimony *and* the reliability of the hearsay evidence offered in its stead.[5]

---

[4] From the many federal and state courts that have been called upon to consider the bounds of "good cause" under *Morrissey v. Brewer*, 408 U.S. 471 (1972), and *Gagnon*, "[t]wo tests have emerged for determining whether the denial of the right to confrontation in that context will comport with constitutional due process." *Henderson v. Commonwealth*, 736 S.E.2d 901, 906 (Va. 2013). The first test, dubbed the "reliability test," "permits admission of testimonial hearsay in revocation proceedings if it possesses substantial guarantees of trustworthiness." *Id.* (citing *Crawford v. Jackson*, 323 F.3d 123, 130 (D.C. Cir. 2003)). This test would admit "sufficiently reliable hearsay evidence without a showing of cause for the declarant's absence." *Lloyd*, 566 F.3d at 344 (citations omitted). The second test, the "balancing test," "requires the court to weigh the interests of the defendant in cross-examining his accusers against the interests of the prosecution in denying confrontation." *Henderson*, 736 S.E.2d at 906 (citing *Lloyd*, 566 F.3d at 344-45 ("The reliability of proffered hearsay is a principal factor, although not the sole factor, relevant to the releasee's interest in confrontation.")); see also *Bell*, 785 F.2d at 642 (listing two factors — reliability and justification for not producing a live witness — to consider when evaluating the government's proffered justification for denying confrontation). It is this second, or "balancing test," as set forth in *Bell*, that we hold should be applied by the criminal division in probation revocation proceedings in the State of Vermont. In adopting this balancing test, however, we recognize that there may be instances where the reliability of the State's hearsay evidence is so poor that, generally speaking, no justification for the witness' absence could overcome the deficit. Additionally, "[i]n some cases, the releasee's interest in confrontation may be overwhelmed by the hearsay's reliability such that the Government need not show cause for a declarant's absence." *Lloyd*, 566 F.3d at 345. And thus, in both situations, we reject a per se rule that the criminal division's failure to explicitly address the State's justification for not producing a live witness would amount to reversible error in all cases. See *id.* With those caveats in mind, we nevertheless emphasize that a probationer may have a sufficiently legitimate interest in confrontation even where the State's hearsay bears some degree of reliability and thus it is a sounder practice to address both factors when ruling on the admissibility of hearsay evidence in a probation-revocation proceeding. *Id.*

[5] We also take this opportunity to clarify the appropriate use of the term "good cause." "Good cause" relates to the broader question of whether a court may deny a probationer the right to confront adverse witnesses and is not to be confused with the justification offered by the State as to why the witness is not present. Indeed, the State may offer a good justification for not producing a witness, but we caution the courts that labeling the State's proffered justification as "good cause" invites unnecessary confusion into the analysis. At a revocation hearing, before a probationer's right to confront adverse witnesses may be denied, a court must make an explicit finding that there is "good cause" to do so. The State's

¶ 19. Here, the State offered three exhibits into evidence: (1) a "Violation Report"; (2) an "Offender Violation Report"; and (3) a "Violation of Probation Sentence Order." Over defense counsel's objections, the court admitted the three documents received through ICOTS, and allowed defendant's Vermont probation officer to testify as to their contents. In so doing the court found that the State's exhibits were "substantially reliable and can be admitted without violating [defendant's] confrontation rights." The court explained that the documents were reliable by virtue of defendant's Vermont probation officer receiving them from Delaware through the ICOTS system. The court also reasoned that defendant's Delaware probation officer filed the documents contained within the exhibits in a Delaware court, and that "as an officer of the Court, he certainly had an obligation to be truthful in filing those documents, and those documents form the basis of the [violation of probation sentence order]." Because the court found the sources of the ICOTS documents were a Delaware probation officer and judge, the court concluded they were "as reliable, if not more reliable, than the toxicology report found reliable by the Supreme Court in *Finch* and more reliable than the affidavit of a police officer found unreliable by the Supreme Court in *Austin*." The court stated that *Austin* was not controlling, as a probation officer does not have the same adversarial relationship with a probationer as a police officer has with a criminal defendant.

¶ 20. ▮▮▮ We agree with defendant that the factors considered by the trial court do not provide sufficient evidence of reliability to justify denying defendant his right to confrontation. Although we have not adopted a formal test to assess the reliability of hearsay evidence, we have held that hearsay may be admissible in probation-revocation proceedings if it bears "traditional indicia of reliability," *Austin*, 165 Vt. at 396, 685 A.2d at 1081, and have enumerated several "important considerations," including: (1) whether there is corroborative evidence; (2) whether the hearsay is an objective fact, or a conclusory statement; (3) whether the hearsay is sufficiently detailed; (4) whether the source of the hearsay has a personal or adversarial relationship with the defendant, or other bias or motive to fabricate; and (5) whether

proffered justification for not providing the witness — whether good, bad, or somewhere in between — is simply one aspect of that analysis.

the hearsay is offered to prove the central issue in the case, *Decoteau*, 2007 VT 94, ¶ 14. See also *Decoteau*, 2007 VT 94, ¶ 31 (Rieber, C.J., dissenting) (citing *State v. James*, 2002 ME 86, ¶ 15, 797 A.2d 732; *Bailey v. State*, 612 A.2d 288, 293 (Md. 1992)).

¶ 21. ▓ ▓ On these factors, we conclude that none of the admitted evidence bears any traditional indicia of reliability. See *Austin*, 165 Vt. at 396, 685 A.2d at 1081; see also *Decoteau*, 2007 VT 94, ¶¶ 13-18 (reviewing for "traditional guarantees of trustworthiness"). Although we acknowledge that defendant's Vermont probation officer received the documents through ICOTS from defendant's Delaware probation officer, that does not, in and of itself, make them sufficiently reliable to justify dispensing with defendant's right to confrontation.[6] Here, the documents themselves are unsigned, unsworn, and in some instances undated. They contain no certification or indication they are part of an official court record. The record on appeal is unclear at best, and the discrepancy between the number of pages of the exhibits as recounted by the prosecutor at the time of their admission and the number of pages submitted as part of the printed case cannot be reconciled. In addition to the lack of traditional indicia of reliability, there is no information clearly linking the subject matter of all three exhibits to defendant's alleged admission of alcohol use. The documents lack clarity and continuity not just in form, but in substance. It is unclear from the limited substantive

---

[6] The State does not contend that any of the ICOTS documents fit within a traditional exception to hearsay thereby rendering the good-cause analysis moot. *Austin*, 165 Vt. at 395, 685 A.2d at 1080-81 ("[I]n determining the reliability of hearsay evidence offered at probation revocation hearings, the federal circuit courts have been guided by the traditional hearsay exceptions and exclusions from hearsay as recognized in the rules of evidence."). We will not consider arguments not adequately raised and briefed. *Johnson v. Johnson*, 158 Vt. 160, 164 n.*, 605 A.2d 857, 859 n.* (1992). Other courts, however, have held that ICOTS documents fall within the public-records exception under the equivalent of Vermont Rule of Evidence 803(8)(A). See *State v. Davis*, No. 1 CA-CR 13-0566, 2014 WL 1056500, at *2 (Ariz. Ct. App. Mar. 18, 2014) (unpub.).

We recognize that there may be utility and convenience to a probation officer in relying on the ICOTS network to send and receive documents. While ICOTS documents may assist in a probation officer's supervision of a probationer, or in deciding whether or not to file a violation complaint, it does not follow that such documents are necessarily admissible into evidence solely by virtue of them being sent and received through ICOTS. As with any piece of evidence, ICOTS documents must meet the requisite standard of admissibility, whether that standard is pursuant to the rules of evidence, or, as here, the Constitution.

information available concerning defendant's alleged admissions when defendant's alleged alcohol consumption took place, and when and to whom defendant made the alleged admissions.

¶ 22. We also disagree that the unsigned, unsworn reports received through ICOTS — allegedly authored by defendant's Delaware probation officer — are more akin to a lab report than a police officer's affidavit. In *Finch*, we upheld the admission of a detoxification-center report corroborating hearsay testimony given by the defendant's probation officer because the document "appear[ed] to be the kind of medical report where, as we have noted in another context, the specter of questionable credibility and veracity is not present." *State v. Finch*, 153 Vt. 216, 218-19, 569 A.2d 494, 495 (1989), *overruled in part on other grounds by Austin*, 165 Vt. at 396-97, 685 A.2d at 1081 (quotations omitted). In the present case, there was no evidence corroborating the ICOTS documents other than defendant's Vermont probation officer's testimony, which constitutes double hearsay as the only Delaware probation officer to whom the Vermont probation officer spoke did not have first-hand knowledge of defendant's supposed admissions. See *Bell*, 785 F.2d at 644 (describing testimony of probation officer recounting a conversation with FBI agent who had no first-hand knowledge of the events as "double hearsay"); cf. *Lloyd*, 566 F.3d at 345 (explaining that out-of-court statements containing multiple layers of hearsay "have been recognized as unreliable"). The ICOTS documents are not akin to the detoxification-center report in *Finch*, which was admissible because it was similar to " 'routine, standard, and unbiased medical reports by physician specialists.' " *Langlois v. Dep't of Emp't & Training*, 149 Vt. 498, 502, 546 A.2d 1365, 1368 (1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 404 (1971)), *cited in Finch*, 153 Vt. at 218-19, 569 A.2d at 495.

¶ 23. In *Austin*, we held that the affidavit of a New Hampshire police officer was inadmissible in a probation-revocation proceeding because " '[t]he relationship between police officers and those whom they arrest is much more personal and adversarial in nature than that between chemists and those whose urine they test.' " 165 Vt. at 397, 685 A.2d at 1081-82 (quoting *Bell*, 785 F.2d at 644). We further noted that "the Vermont Rules of Evidence specifically exclude investigative reports by police and other law enforcement personnel" from exceptions to the hearsay rule. *Id.* at 397, 685 A.2d at 1082 (citing V.R.E. 803(8)(B)(i)). In this case,

there is no evidence as to who took defendant's alleged admissions, and therefore we cannot assess the nature of that relationship and whether there was bias or motive to fabricate. Assuming that defendant made his admissions to his Delaware probation officer, such a relationship is personal, and has the potential to become adversarial upon the filing of a revocation complaint, such that it favors a probationer's right to confrontation. Further, these documents are unsigned, unsworn, and uncertified, and thus the "circumstances indicate [a] lack of trustworthiness." V.R.E. 803(8)(B)(iv). Unlike the ICOTS documents offered by the State, the affidavit in *Austin*, although held to be inadmissible in that case, was signed, sworn, notarized, and came with a penalty of perjury for falsifications or misrepresentations contained therein. Falsifications or misrepresentations in unsigned reports such as the ICOTS documents at issue in this case, unlike the signed affidavit in *Austin*, carry no such penalties, and thus the trustworthiness element is absent.

¶ 24. With regard to the remaining reliability factors, neither the documents nor defendant's Vermont probation officer's testimony contain adequate information or detail regarding the circumstances of defendant's admissions. None of the documentation states to whom defendant made the admissions, and important information is missing concerning when the disclosures were made and when the offending behavior took place. Finally, and importantly, the ICOTS documents and defendant's Vermont probation officer's testimony were offered to prove the central issue in the case, i.e., whether defendant consumed alcohol while in Delaware in violation of condition 1, and constituted the entirety of the State's evidence in the revocation proceeding. Thus, upon consideration of these factors, we conclude that none of the documents demonstrate sufficient, if any, indicia of reliability.

¶ 25. Notwithstanding this lack of reliability, *supra*, ¶ 20, we next address the second factor of the *Bell* balancing test: the reason presented by the State for failing to procure a live witness. At hearing, the State's proffered reason for failing to procure defendant's Delaware probation officer was that "[o]bviously, Delaware has no particular interest in coming to Vermont."[7] This

---

[7] The record reveals no effort by the State to obtain the attendance of defendant's Delaware probation officer through formal means or otherwise. Rather, the record shows that, approximately one hour prior to the start of the revocation hearing,

reason is woefully insufficient. Other courts faced with evaluating the sufficiency of the prosecution's offer in this regard have recognized the validity of various considerations for failing to procure live-witness testimony. See, e.g., *United States v. Simms*, 757 F.3d 728, 733 (8th Cir. 2014) (stating fear of violence and reprisal may provide basis for not producing witness); *United States v. Martin*, 371 F.3d 446, 449 (8th Cir. 2004) (accepting fact that witness was out of state, and that attempts to locate the witness had failed, as "reasonably satisfactory" reason proffered by government for lack of live testimony); *Bell*, 785 F.2d at 643 (explaining that good reasons for not procuring live testimony may include "danger of physical harm" to an informant or the level of difficulty or cost); *United States v. Simmons*, 812 F.2d 561, 564 (9th Cir. 1987) (recognizing difficulty and cost as possible explanations). In this case, the State failed to demonstrate that it made any effort to determine the actual availability of defendant's Delaware probation officer, or what the cost or dangers in procuring him may have been. In light of the insufficiency of this explanation and the aforementioned lack of indicia of reliability underpinning State's exhibits 1, 2, and 3, the court erred by concluding that there was "good cause" to deny defendant his right to confrontation.

¶ 26. ▆▆ ▆▆ Having concluded that the State failed to establish "good cause" for dispensing with defendant's confrontation right, we further hold that the admission of unreliable hearsay was not harmless error. "An error is harmless if, without considering the offending evidence, there is still overwhelming evidence to support the conviction and the evidence in question did not in any way contribute to the conviction." *Groce*, 2014 VT 122, ¶ 19 (quotation omitted). Without the documents, there was no evidence establishing that defendant consumed alcohol in violation of his probation condition 1. Because the erroneously admitted ICOTS documents constituted the entirety of the State's evidence in support of its complaint that defendant violated his probation, their admission cannot be harmless. See *Decoteau*, 2007 VT 94, ¶ 19 (concluding that erroneous admission of hearsay was not harmless error where "[t]he State demonstrated . . . the reasons for [the

---

the State asked the court whether such attendance was necessary. The court properly denied a prehearing ruling on this issue, instead leaving the State to its proof.

defendant's] violation solely through improperly admitted hearsay evidence."). It is thus necessary to vacate the probation violation determination.

¶ 27. ▇ Because the issue is likely to arise again, we also address defendant's argument that Vermont Rule of Criminal Procedure 32.1 provides a right to confrontation above and beyond the constitutional requirements set forth in *Morrissey* and *Gagnon*, and which is recognized in *Austin* and *Decoteau*. Rule 32.1 states that at a revocation proceeding, a probationer "shall be given: . . . the opportunity to question opposing witnesses." V.R.Cr.P. 32.1(a)(2)(D). The preceding section, V.R.Cr.P. 32.1(a)(1)(C), applies to preliminary probation revocation hearings, and states, "[t]he probationer shall be given . . . upon request, the opportunity to question opposing witnesses unless, for good cause, the judicial officer decides that justice does not require the appearance of the witness." We recognize "the time-honored precept" in statutory interpretation that expressio unius est exclusio alterius (the expression of one thing is the exclusion of another). *State v. Fontaine*, 2014 VT 64, ¶ 10, 196 Vt. 579, 99 A.3d 1034 (quotation omitted). Nonetheless, we read an implicit good-cause exception into section 32.1(a)(2)(D). Defendant argues the rule is unambiguous, and that the clear language permits no exceptions to a probationer's right to confront adverse witnesses.

¶ 28. ▇ The Vermont Rules of Criminal Procedure are based in part on the Federal Rules of Criminal Procedure. Reporter's Notes, V.R.Cr.P. 1. Prior to its amendment in 2002, Federal Rule 32.1(a)(2)(D) contained language identical to Vermont's current Rule 32.1(a)(2)(D). See Reporter's Notes, V.R.Cr.P. 32.1 ("This rule, which provides for revocation or modification of probation, is based on Federal Rule 32.1, as added effective December 1, 1980 . . . ."); see also F.R.Cr.P. 32.1(a)(2)(D) (2001) (amended 2002). In spite of defendant's argument that the language of Vermont Rule 32.1 makes no allowances, federal courts consistently read a good-cause exception into probationers' statutory right to question adverse witnesses under Federal Rule 32.1. See, e.g., *Morrissey*, 408 U.S. at 489; *Bell*, 785 F.2d at 642-43; *United States v. Comito*, 177 F.3d 1166, 1170-72 (9th Cir. 1999); *United States v. Walker*, 117 F.3d 417, 420 (9th Cir. 1997); *United States v. Zentgraf*, 20 F.3d 906, 909 (8th Cir. 1994). Federal jurisprudence on this matter is persuasive, see, e.g., *State v. Madigan*,

2015 VT 59, ¶ 13, 199 Vt. 211, 122 A.3d 517, and we therefore read an implicit good-cause exception into Vermont Rule 32.1(a)(2)(D). To hold otherwise would require the State to procure witnesses at the probationer's request in every probation-revocation proceeding regardless of the difficulty, time, or expense. Such a burden on the State is untenable.

¶ 29. In sum, we hold that the trial court abused its discretion in finding "good cause" to admit State's exhibits 1, 2, and 3 and allowing defendant's Vermont probation officer to testify as to their content. Because the documents and testimony constituted the State's only evidence at hearing, the trial court's factual finding that defendant consumed alcohol in violation of his probation condition is not reasonably supported by credible evidence and cannot stand. Without that finding, this Court cannot affirm the trial court's legal conclusion that defendant violated his probation.

*Reversed.*